HOSACK & BLUNT, executors, &c. *vs.* ROGERS and others.

Where a firm consisting of three persons became insolvent and made an assignment of the copartnership property for the payment of its creditors; and the senior partner covenanted that he would pay to such of the creditors as should release the two junior partners the full amount of their debts, if the assigned property was not sufficient, out of the proceeds of his claims upon the French government, when the same should be received; and the senior partner afterwards died, having made R., one of the creditors, executor, who afterwards recovered a part of the claims upon the French government; *Held*, that the covenant was in equity a specific appropriation of the fund for the payment of the balance due to the creditors who executed the release to the two junior partners, which entitled them to a preference in payment out of that fund as against the general creditors of the decedent; and that the executor could, therefore, only have his rateable proportion of the fund with others who executed the release, but could not retain for his whole debt.

The revised statutes do not take away the right of an executor to retain for his own debt out of the estate of a testator who died previous to 1830, although the assets out of which he seeks to retain came to the hands of the executor subsequent to that time.

The distribution of the estates of persons who died previous to the adoption of the revised statutes, must be made according to the law as it then existed, and not according to the rules of the revised statutes.

An executor's right to retain, extends to debts due to him jointly with others, or in the character of trustee, as well as to those which are due to him solely and in his own right.

The mere fact that an executor is an octogenarian, if in possession of his faculties in other respects, is not a sufficient reason for removing him from his trust, or for taking the property out of his hands.

As a general rule, upon a bill filed against an executor or administrator for a distribution of the estate of the decedent, if it appears that there is a clear balance in his hands uninvested, beyond all just claims made by him upon the fund, such balance will be directed to be brought into court and invested pending the suit.

Where an abandonment is rightfully and properly made, although the underwriters have not accepted the same and paid the loss, the *spes recuperandi*, so far as the property was covered by the policy, belongs to the underwriters. And it seems, that the assured has no equitable lien thereon in the hands of the underwriters, for the payment of the loss in preference to other creditors.

THE firm of Archibald Gracie & Sons having become April 4. embarrassed and being indebted to A. Hosack, the complainant's testator, and to R. King, N. Rogers & Sons and

several other creditors in a very large amount, A. Gracie, in behalf of the firm, made an assignment of certain claims which they had upon the British government, for the payment of the debts of such of the creditors as should become parties to the assignment and should thereby release the two junior partners of the firm from all further liability. And A. Gracie, the senior partner, covenanted with such creditors that if the assigned claims upon the British government should prove to be insufficient to pay their debts in full, the deficiency should be paid out of the monies which might be recovered and received by him, or his executors or assigns, from the French government, on account of certain large claims which he then had upon that government; when and as soon as the monies for such claims should be received by him or his executors or assigns. The claims of A. Gracie upon the French government arose out of the capture and condemnation of his property under the Berlin and Milan decrees; upon which property $20,000 had been insured by the Commercial Insurance Company in 1807. After the property upon which this insurance was made had been sold under the orders of the French government, Gracie abandoned to the underwriters. He afterwards recovered a judgment for the full amount of the policy against the company, in May term, 1816; but, as was alleged by the complainants, no record of the judgment against the insurance company was ever made up and filed. The insurance company subsequently became insolvent, and J. B. Murray and others were appointed trustees of its effects, and only a part of the judgment was paid to Gracie. In the assignment of A. Gracie & Sons it was provided that if any of the creditors residing in the United States should neglect or refuse to become parties thereto for the space of thirty days from its date, or, if residing out of the United States, for the space of six months, their share of the assigned property should be paid to such creditors as should become parties to such assignment, to the extent of their several debts. All the creditors, except Baring & Brothers, Ewart, Myers & Co., King & Gracie, and A. T. Sampayo, who resided in England, became par-

ties to the assignment by executing the same within the time prescribed. King & Gracie were the agents of A. Gracie & Sons in relation to their claims upon the British government, and were informed of the contemplated assignment and arrangement for the discharge of the two junior partners of the firm ; but before they had notice of the execution of the assignment they had succeeded in recovering sufficient of those claims to pay thirty-five per cent upon the amount of the debts. They thereupon paid to the English creditors their proportion of the fund, according to the intended arrangement, and transmitted the residue to the United States, which was received and distributed rateably among the other creditors. Baring & Brothers and the other English creditors did not become formal parties to the assignment; but upon the receipt of their portion of the proceeds of the claim upon the British government, and within two months after the date of the assignment, they executed an instrument, under their hands and seals, by which, in consideration of the thirty-five per cent thus received, they agreed to accept the same in full of their debts so far as related to the two junior partners, but it was not to discharge A. Gracie, the senior partner by whose request and consent that discharge of the junior partners was given. The whole amount of debts due, including the balance of a debt due to R. King a part of which had been previously provided for, was at the date of the assignment $255,905, exclusive of interest thereon for about one year. And the amount due to N. Rogers & Sons, exclusive of interest, was $42,464. After the death of A. Gracie, his surviving executor, N. Rogers, caused his claims under the French treaty to be presented to the board of commissioners, and they were allowed so far that the amount of his dividend, exclusive of costs and agent's commissions, amounted to about $73,000. Murray, as the surviving trustee of the insurance company, was also allowed the full amount of the policy for the insurance money paid or to be paid to Gracie or his executor. And certificates for the several sums allowed were duly issued to the persons in whose fa-

vor these allowances were made. About the time N. Ro-
gers received the certificates for the amount allowed to him
as the executor of A. Gracie, the complainants filed their
bill in this cause, as the executors of A. Hosack, in behalf of
themselves and other creditors of A. Gracie, against N. Ro-
gers as his executor, and against the several creditors who
were provided for in the assignment or their representa-
tives, for an account and distribution of the estate of A.
Gracie among his several creditors according to their equi-
table rights; and also for an injunction to restrain N. Rogers
the executor from receiving the money on the claims allow-
ed to him, or from receiving payment of the judgment
against the insurance company out of the monies to be re-
ceived by Murray on the claim allowed to him as trustee of
the company. An injunction was allowed according to the
prayer of the bill, but was not served until after N. Rogers
had obtained the certificates of the amount allowed to him
as executor. The complainants thereupon filed a supple-
mental bill, stating the fact that the executor had obtained
the certificates, and praying for an injunction to restrain the
several deposit banks in the city of New-York from paying
the certificates and to prevent him from receiving payment
thereon; which injunction was granted as prayed for.

Shortly after the issuing of the last injunction, the com-
plainants petitioned the vice chancellor of the first circuit,
before whom the proceedings were commenced, for an or-
der directing N. Rogers the executor to surrender up the
certificates to the clerk of the court, and for a receiver to
collect the amount of the certificates as they became paya-
ble and to invest the same to abide the decision of the cause.
This application was resisted on the part of the executor,
who claimed the right to retain for the amount of his debt,
not only out of the money due upon the judgment against the
insurance company, and other personal estate of A. Gracie,
but also out of the amount due on the certificates granted
to himself as such executor, and who also claimed the right
to receive and control the whole fund until a decree for the
distribution thereof should be made in the suit. Several of
the other creditors, who were made defendants in the original

bill, also appeared by their counsel before the vice chancellor, upon the hearing of the petition, and resisted the claim of the executor to retain in his possession any part of the funds arising either from the French claims or otherwise. After hearing the several parties, the vice chancellor made an order that the executor should within five days deliver to the clerk the several certificates and the money, if any, which he had received thereon, and should execute the necessary power to enable the clerk to receive the money due on the certificates and all other monies and effects belonging to the estate of Gracie mentioned in the bill and supplemental bill ; that he should attend and be examined on oath touching the premises ; and that the clerk should invest the monies in the New-York Life Insurance and Trust Company on interest, to abide the further order of the court, after paying to the executor his lawful commissions as executor ; without prejudice to the rights of any of the parties. From this order N. Rogers the executor appealed to the chancellor ; and in the meantime he deposited the certificates with the clerk, but without endorsing the same or executing any other authority for the clerk to receive the money thereon. Upon the coming in of the answer of the executor, an application was made by him to the vice chancellor to dissolve the injunction, or to modify the same so as to permit him to collect the monies due from Murray, as the trustee of the insurance company, to the estate of A. Gracie ; which motion was denied. And from this decision of the vice chancellor the executor also appealed. After the argument of the first appeal, cross applications were made at different times by N. Rogers, and by the complainants, for a temporary disposition of the fund while such appeal was under consideration. But as the parties could not agree as to what disposition should be made of it, and as the certificates were not endorsed so as to put the fund fully within the control of the court until the appeal was decided, no orders were made upon those applications.

*J. W. Gerard & G. Griffin*, for the appellant. The appellant having accepted the executorship of Archibald Gracie, and entered on the duties thereof *prior to the year* 1830, he had a vested right to retain for his debt out of any, then present or future assets. An executor may retain for an equitable debt. (*Wm. Black.* 965. 4 *Vesey, jr.* 763. *Wms. on Ex'rs*, 688. *Tol. on Ex.* 297. *Weeks* v. *Gore*, 3 *P. Wms. note. Waring* v. *Danvers*, 1 *P. Wms.* 295. *Ram on Assets*, 271. *Tol. on Ex.* 415. *Nones* v. *Barlow*, 1 *Sim. & Stu.* 588. *Ram on Assets*, 271, 317. 1 *Story's Eq.* 519, 520. *Moses* v. *Murgatroyd*, 1 *John. Ch. Cas.* 19. *Codwise* v. *Gelston*, 10 *Johns. R.* 57. *Decker* v. *Miller*, 2 *Paige*, 150.) The revised statutes operate prospectively and do not take away the right of retainer in antecedent cases. (*Dash* v. *Van Kleek*, 7 *John. R.* 477. *Sayre* v. *Wisner*, 8 *Wendell*, 661. *The People* v. *Supervisors of Columbia*, 10 *Idem*, 363. *Ward* v. *Kitts*, 12 *Idem*, 137. *Van Rensselaer* v. *Livingston*, 12 *Idem*, 490. 2 *Paige*, 150. 1 *Story's Eq.* 522. *Bryant* v. *Marshall*, 12 *Mass. Rep.* 321.)

The *covenant* of Archibald Gracie in the *assignment*, dated 27th April, 1824, to pay out of his *French* claims the deficiency, (if any,) arising out of *the assignment* of the *English* claims thereby assigned, was not an equitable *assignment or mortgage* of the *French* claims, so as to give the creditors a *specific lien thereon*, the covenant being a personal covenant merely. (*Bailey* v. *Boulcott*, 4 *Russ.* 345. *Bradley* v. ——, *Ridg. Ca. in Chan. temp. Hardwicke*, 194. 2 *Roses' Rep.* 355, *Ex parte Heywood in the matter of Holmes*. 14 *East*, 582, *Williams* v. *Everett*. 2 *Leigh's Rep.* 19, *Clayton* v. *Fawcett*. 5 *Verm. Rep.* 97, *Brainard & Newton* v. *Barton. Hagman* v. *Sompeyrac*, 3 *Louisiana Rep.* 154. *Lepard* v. *Vernon*, 2 *Ves. & Beame*, 51. *Vandekar* v. *Vandekar*, 11 *Johns. Rep.* 122. *Nicholls* v. *Trustees of Huntington*, 1 *John. Ch. Rep.* 183. *Heath* v. *Hall*, 4 *Taunt. Rep.* 326.) The covenant is a several not a joint covenant. (5 *Dowl. & Ryl.* 106. 3 *Barn. & Cres.* 254. 5 *Price*, 529. 1 *Saund.* 153, *n.* 1. *Chitty on Plead.* 3, 6 *and*

*cases there cited, ed. of* 1825. *Servante* v. *James,* 10 *Barn. & Cres.* 410. 1 *John. Cas.* 319. 1 *East,* 407. 2 *Mod.* 82. *Comyn's Land. & Ten.* 108, 456. 8 *Mass. Rep.* 462.)

This is virtually an attempt to call in the aid of the court of chancery to decree a specific execution of a personal covenant for the payment of money. (1 *Mad. Ch.* 402. *Platt on Cov.* 556.) Nehemiah Rogers had a right to the possession of all the assets until after the final decree in the cause, or at least he should not have been deprived of such possession on mere motion before answer. At all events, his claim to retain for his own debt, ought not to have been disturbed until a final hearing and decree in the cause. (*Hopkins,* 429, *Orphan Asylum* v. *McCartee.* 2 *Atk.* 126. 12 *Vesey,* 4. 2 *Eq. Cases, Ab.* 420. *Will. on Ex.* 31, 113, 120, 122. *Id.* 1251, 112. 5 *John. Ch. Rep.* 158. 2 *Swanst.* 650. *Tol. on Ex'rs,* 34. *Van Alstyne* v. *Hunter,* 5 *John. Ch.* 158. *Hoffman's Ch. Prac.* 319 *to* 327.) The decrees are erroneous in ordering any part of the monies received from the commissioners, under the French treaty, to be brought into court, and in not dissolving the injunctions *in toto.*

These are not equitable assets. (*Story's Eq.* 519, 520, 521, 522. 2 *Will. on Ex.* 1033, 1034, 1035. 2 *Atk.* 50. *Jeremy's Eq. Juris.* 525. 1 *John. Ch. Rep.* 119.) The defendant, Nehemiah Rogers, was entitled to retain his commissions on the whole amount of the monies received under the French treaty. He was entitled to retain the dividend of his debt, even on the principle that the covenant of Archibald Gracie contained in the assignment of the 27th April, 1824, was an equitable assignment or mortgage. The monies due from James B. Murray, as trustee of the Commercial Insurance Company, forms no part of the French claims. The abandonment to the underwriters transferred to them the property covered by the policy, and all claims arising out of it; and they became entitled to all the rights of owners of the property. (1 *Philip's on Ins.* 382, 458, 479. 15 *Mass. Rep.* 346. 9 *John. Rep.* 26. 1 *Caines' Rep.* 673. 12 *Mass. Rep.* 96. 8 *John. Rep.* 183. 5 *Peter's S. C. Rep.* 604. 1 *Idem,* 213.)

*J. Blunt & D. Lord jr.* for the complainants and Baring and Brothers. The deed of April 27th, 1824, operated to create a specific lien and claim upon the moneys to be recovered by Archibald Gracie, his executors, administrators or assigns, on account of his claims on the French government in that deed mentioned. (*Bradley* v. *Root*, 5 *Paige*, 640. *Fashion* v. *Atwood*, 2 *Ch. Cas.* 6, 36. *Powell on Contracts*, 317. *Beckley* v. *Newland*, 2 *P. Wms.* 182. *Wright* v. *Wright*, 1 *Vesey, sen.* 409, 412. 3 *Keb.* 304. *Co. Litt. Butler's note*, 145. *Winch* v. *Keely*, 1 *T. R.* 622. *Yeates* v. *Groves*, 1 *Vesey, jun.* 280. *Row* v. *Dawson*, 1 *Vesey, sen.* 332. *Ex parte Perfect, Mont. Rep.* 25. 3 *Deacon & Chitty*, 218, 334. *Lett* v. *Morris*, 4 *Simon's Rep.* 607. 1 *Mad. Rep.* 55, 331. 4 *Bro. Ch. Cas.* 6, 64. 1 *Sim. & St. Rep.* 590, 607. *Ex parte South*, 3 *Swanst.* 392.) That deed being in its nature a general arrangement between a debtor and his creditors, gave a right to a rateable distribution of the fund among all the creditors entitled under the deed, without preference of one over another. (*See Newland on Contracts*, ch. 25, *p.* 414. *Rose* v. *Leicester*, 4 *East*, 372. *Morris* v. *Bank of England*, 2 *Cas. Temp. Talbot*, 218. *Moses* v. *Murgatroyd*, 1 *John. Ch. Cas.* 130. *Ellis, Debtor and Creditor*, 201—206. *Wadeson* v. *Richardson*, 1 *Vesey & Beame*, 103, 110.) By the operation of the deed upon the debts of the creditors assenting thereto, such debts were released at law, and they will be upheld in equity only in subordination to the equitable rule of a rateable distribution. (*Cheetham* v. *Ward*, 1 *Bos. & Pul.* 630. 10 *John. R.* 518. 7 *Id.* 207. *Co. Litt.* 232. *Kirby* v. *Taylor*, 6 *John. Ch. Cas.* 250.) By the covenants in the deed, N. Rogers, if entitled to retain, can only retain for his rateable share of the fund; and this has been allowed on his own statement of the amount. (*Ram on Assets*, 271. *Hopton* v. *Dryden, Prec. in Ch.* 181. 2 *Ch. Cas.* 54.) By the rules of law and equity applicable to general agreements between debtor and creditors, any right of retainer which might have arisen under any previous act of any of the parties, debtor or creditors, (as the will of A. Gracie in the present case,) was waived by the coming into such a general

arrangement. (*Rose* v. *Leicester*, 4 *East*, 372. *McKenzie* v. *McKenzie*, 16 *Vesey*, 372. 2 *T. R.* 64. *Sadler* v. *Jackson*, 15 *Vesey*, 52. *Jockman* v. *Mitchell*, 13 *Vesey*, 581. *Ellis, Debtor and Creditor*, 200, 201, 202, 206. *Ram on Assets*, 271. 2 *Eq. Cas. Ab.* 426. *Hopton* v. *Dryden*, *Pre. in Ch.* 181.) Nehemiah Rogers, as surviving executor of Archibald Gracie, was, as executor, a mere trustee of the fund in question; and it is of course, on application of parties entitled, to require payment into court of monies to which the executor in his own right has no title. (*Strange* v. *Harris*, 3 *Bro. Ch. Cas.* 365. *Jordon* v. *Rothbey*, 3 *Vesey*, 572. *Blake* v. *Blake*, 2 *Sch. & Lef.* 26. *Yare* v. *Harrison*, 2 *Con. Ch. Cas.* 377. *Vigrass* v. *Binfield*, 3 *Mad. R.* 62. *Langley* v. *Hawk*, 5 *Id.* 46. *Mortlock* v. *Lethes*, 2 *Mer. Ch. R.* 491. *Jenkins* v. *Jenkins*, 1 *Paige*, 243. 10 *John. R.* 65, 522. 12 *Idem*, 276. 2 *Sim. & Stu.* 217. 1 *Story's Equity*, 506, 507.)

Nehemiah Rogers, as executor and trustee, sets up claims in hostility to his trust, and ought not to be allowed, against the will of the parties interested in the fund, and under the circumstances of his extreme age, the probable duration of the suit for the administration of the fund, his own hostile claims and conduct, and the situation of his own estate, to be permitted to hold and administer the body of the fund. (1 *Jac. & Walk.* 112. *Grant's Advice to Trustees*, 42. *Gordon* v. *Rothbey*, 3 *Vesey*, 572. *Andrews* v. *Powys*, 2 *Bro. Parl. Cas.* 476. 12 *Vesey*, 4. *Lupton* v. *Lupton*, 2 *John. Ch. Cas.* 627. *Haggarty* v. *Furniss*, 1 *Paige*, 321.) As executor or trustee he has no right to use the trust fund for his own purposes, nor to mix it with his own estate, which would embarrass the trust. He therefore can sustain no injury by a deposit of the trust fund, under the order of the court for its protection; and his purpose to possess himself of it against the consent of the creditors of A. Gracie's estate for the purpose of an unequal distribution in his own favor renders him an unfit depository. The circumstances of the case stated in the bill of complaint require an account to be taken of the debts provided for in the deed of April 27, 1824, of the funds realized; and with the trust

character attached to the latter, the case required the exercise of the jurisdiction of a court of chancery. Where a fund is in dispute, the court will order it to be brought in and invested for the security and benefit of the claimants.

The claim upon the French government for the loss of Gracie's property, insured with the Columbian Insurance Company, was a part of the claims on France comprehended in the deed of 27th April, 1824, whether A. Gracie retained a lien on it or not. The question was as to the actual or legally implied intention of A. Gracie, rather than as to the right of absolute property in the *spes recuperandi*. Until actual payment in full of a total loss of property insured, the insured has an interest in property abandoned as security for his payment; and until an actual deed of cession of the property, all remedies must be pursued in the name of the assured. (*Gracie* v. *N. Y. Insurance Co.* 8 *John. Rep.* 245. *Randall* v. *Cockran*, 1 *Ves. sen.* 98. 1 *Edens R.* 130.) If the claim for the money in the hands of the trustee of the Commercial Insurance Company is not comprehended in the deed of 27th April, 1824, and N. Rogers has any right as executor to retain it, then it ought to be taken into account upon his debt; and either he is to be postponed claiming under the deed of 27th April, 1824, until the other creditors have received an equal per centage, or he can only receive a rateable dividend from the French fund in respect to the balance of his debt, after deducting the money realized from the first mentioned claim. The decree appealed from ought to allow the defendant N. Rogers to retain, on his accountable receipt, only a rateable proportion of the money payable on the certificates in his name as executor and in Murray's name as trustee, and to require him to pay into the clerk's hands for investment all the residue after deducting the executor's commissions.

No answer has been filed by Samuel Rogers, Henry Rogers and Edward N. Rogers, and it is contrary to the practice in courts of equity to dissolve injunctions when the parties charged with actual knowledge of the facts charged in the bill of complaint have not fully answered.

(*Eden on Injunc.* 59, 66. *Rowcroft* v. *Donaldson*, 1 *Fowl. Ex. Pr.* 286. *Bolieme* v. *Porter*, *Barnad. Ch. Rep.* 352. *De Peyster* v. *Graves*, 2 *John. Ch. C.* 148. *Satterlee* v. *Bargy*, 3 *Paige*, 142.)

*T. Sedgwick, jun.* for the residuary legatee of A. Gracie.

THE CHANCELLOR. The order of the vice chancellor was clearly wrong in directing the executor of A. Gracie to pay into court the small sums in his hands received under the Neapolitan treaty, or any other funds which were in nowise connected with the French claims. If the complainants, and other creditors of A. Gracie and Sons who accepted the assignment and released the two junior partners, are to be considered as having released the senior partner also, except so far as related to his interest in the French claims, the complainants had no right to call upon the executor to account for any other portion of the property of the decedent which had come to his hands or which belonged to him in his general character of executor. On the other hand, if the complainants and N. Rogers & Sons still retained their claims against Gracie, so that he and his other estate were still liable for the payment of the deficiency in case the proceeds of the claims both upon the English and French governments were not enough to pay the whole, the executor is undoubtedly entitled to retain for his own debt in preference; as the law was at the time the testator died, in 1829. Previous to the revised statutes the right of the executor to retain was unquestionable. Even the payment of the money into court, or into the hands of another executor or a receiver under the direction of the court, would not deprive him of that right. (*Langton* v. *Higgs*, 5 *Sim. Rep.* 228. *Chissum* v. *Dewes*, 5 *Russ. Rep.* 29. *Decker* v. *Miller*, 2 *Paige's Rep.* 149.) The right to retain extended also to debts due to him jointly with others, or in the character of trustee, as well as those due solely to himself in his own right, as he could not in either case bring a suit against himself as executor to recover such a debt. (2 *Will. on Ex'rs.* 685.) And the right to retain for his debt, out of any future assets which might come to his hands as executor, having

become vested by the assumption of the trust previous to 1830, the provision of the revised statutes taking away future preferences among creditors and depriving the executor or administrator of his right to retain could not divest the right. The distribution of the estates of persons who died before the first of January, 1830, must be made to the persons who would be entitled to receive them, so far as their rights were then vested, in the same manner as if the law on this subject had not been changed. The judgment in favor of Hosack against the three copartners could not be released as to two of the defendants therein, so as to leave it still subsisting at law as a judgment debt against the senior partner, and thereby to entitle it to a preference in payment out of his estate. And without a release it could only have survived, at law, as against the other two. But if it was the intention of the parties that A. Gracie should remain personally liable for the whole debt, notwithstanding the release, it would still be a subsisting debt against him in equity. At present I am inclined to think that it was not the intention of Gracie, or of the creditors who executed the assignment, that he should be personally liable for their debts beyond the amount which might be received from the French claims. And if such was the legal effect of the assignment as to those who became parties thereto, then the English creditors have neither complied with its letter or its spirit in such a manner as to entitle them to share with the other creditors in the proceeds of the French claims. They did not in fact become parties to the assignment within the six months from its date, or even within the six months from the time when they must have heard of it; and all except King and Gracie, who do not appear to have released the two junior partners, have expressly reserved a right to collect the residue of their debts from A. Gracie. And as this release is stated upon its face to have been given with his consent and at his request, they have still an existing claim against his general estate, if any, in the hands of his executor or which may hereafter come to his hands, unless such claims are barred by the statute of limitations.

It would be improper, in this stage of the suit, to express any definitive opinion upon the question whether the execution of the assignment was a valid release, in equity, of all further indebtedness of Archibald Gracie, or his estate, beyond the proceeds of his claims upon the French government. The answers of most of the creditors who executed the assignment, and who are directly interested in the question as the right of the English creditors to participate in the special fund depends upon it, are not before me on these appeals. The facts also may possibly be varied by the proofs. If it was the intention of the assignment to reserve a general right to claim payment of the debts from A. Gracie personally, then the release of the English creditors, although in a separate instrument, may be considered as a substantial compliance with the terms of the assignment, and they are entitled in equity to participate in the special fund upon which a specific equitable lien is given by the covenant of A. Gracie. On the contrary, if they have reserved to themselves a personal claim against the senior partner which they would not have been entitled to under the assignment, although they cannot now be deprived of the 35 per cent which they received as the consideration of their release, they will not be entitled to participate in the fund arising from the French claims. And in that case they must proceed in their own names against the surviving executor, or the estate of the deceased executrix, or both, to obtain the residuary estate now in his hands or which the executrix received before her death. But they cannot come in under a bill filed by parties who have no legal or equitable claim upon such residuary fund. Neither in that case can such residuary fund be taken out of the executor's hands in this suit, even if his debt is discharged as to such residuary fund so that he has no right to retain as against the general creditors of Gracie or his residuary legatee.

For reasons similar to those before stated, it may be improper to express a definitive opinion upon the question whether Gracie's judgment against the underwriters, so far as it remained unpaid at the date of the assignment, was a part of his claims upon the French government within the

intent and meaning of the covenant in that assignment. But upon the facts as they now appear I am inclined to think it was not then a claim of his upon the French government to which Gracie and his creditors were primarily entitled to the exclusion of the general creditors of the insolvent insurance company. By the abandonment, even without the prosecution of his claim to a judgment, the underwriters became entitled to the *spes recuperandi* of the property insured, so far as it was covered by the policy. And I am not aware of any principle that would prevent the underwriters from selling their interest in the subject abandoned and appropriating the proceeds thereof to the payment of any of their debts, although the insurance money due upon the policy had not become due, or had not been paid. In the case of *Mellon* v. *Bucks*, (17 *Mart. Rep.* 371,) the supreme court of Louisiana decided that after an abandonment and before acceptance thereof, the title of the property abandoned was so far out of the assured that he could not maintain an action in his own name to recover for an injury to the same. There does indeed appear to be a natural equity that the assured should be entitled to a preference in payment, in case of insolvency, out of the proceeds of the subject abandoned; but it may be doubtful whether an equitable lien of that kind can be retained consistently with commercial usage, and the absolute control which it is necessary the underwriters should have over this species of property to save themselves from an absolute loss. Again; if such an equitable lien can be enforced in favor of the assured so long as the proceeds of the *spes recuperandi* can be traced and identified, it does not follow that the balance due on Gracie's judgment against the insurance company was a claim held by him against the French government at the time of this assignment, within the intent and meaning of his covenant.

I have no doubt upon the question that the covenant of Gracie to pay the creditors out of the monies which should be received by him or his representatives on account of his French claims, was an equitable mortgage or specific appropriation of that fund for the payment of the creditors

who came in under the assignment, so as to entitle them to a preference over other creditors in relation to that fund so far as the proceeds thereof can be traced and identified. In the present case there is no difficulty on that subject. Had the fund come into the hands of Gracie in his lifetime, this court might have restrained him from paying it out to general creditors in violation of his covenant to apply it to this particular purpose; and as Gracie himself could not have preferred one of this class of special creditors to another, if the fund had come to his hands in his lifetime, it is now a special fund in the hands of his executor, who is only entitled to retain to the extent of his share after payment of his commissions and expenses as to this particular fund. A written agreement or order to pay a debt out of a particular fund, is an equitable mortgage or assignment of the fund pro tanto, and entitles the creditor to claim a preference in payment out of that fund over the general creditors of the mortgagor, so far as the fund remains in such a situation that it can be traced and identified. (*Fruhling* v. *Schroder*, 2 *Scott's Rep.* 135. *Clark* v. *Mauran*, 3 *Paige's Rep.* 373. *Bradley* v. *Root*, 5 *Idem*, 632.)

Although the defendant N. Rogers was not entitled to retain for his whole debt out of this special fund, in his character of executor, he was clearly entitled to his proportionate share of that fund after deducting his commissions and expenses. The vice chancellor's order was, therefore, wrong in compelling him to bring the whole of that fund into court to abide the litigation between him and the other claimants of the residue thereof. Even if the English creditors are entitled to come in and share with the other creditors under the assignment, a very large sum will still belong to N. Rogers, in any event, which is primarily chargeable upon the proceeds of these certificates. And as it appeared from the complainant's own showing that N. Rogers' property was embarrassed with debts, it was unreasonable thus to deprive him of the power of paying off those debts with that part of the fund in his hands which clearly belonged to him.

Whatever small sums N. Rogers has received from other sources than the French claims, he has a right to retain towards the residue of his debt; or he must account for the same to other persons than the complainants in this suit, if those who executed the assignment have released the residue of their debts. His proportionate share of this particular fund cannot, therefore, be diminished by the small sums which he has thus received. This part of the order first appealed from must, therefore, be so modified as to permit the clerk, upon the receipt of the money on the certificate, to pay him his commission upon the whole amount receivable on such certificates, and also to pay him such portion of the residue as his debt of $42,464 bears to $255,905, the whole amount due to the creditors under the assignment including the claims of the English creditors. And as it will be more beneficial for all parties that the money now due upon the certificates should be drawing seven per cent in his hands, than a much less sum under an investment by the court, his whole share of these certificates is to be paid to him immediately out of the fund now payable; he giving his receipt therefor to the clerk, to be accounted for in the final settlement and distribution of the fund among the creditors, with seven per cent interest, according to their rights as the same may be hereafter established. As to the residue of the fund, which belongs to the other creditors under the assignment or is in dispute with the English creditors, it is proper that it should be brought into court to abide the event of the suit. It is in the hands of the executor in the character of a trustee; and as he has no right to use it for his own private purposes, it is almost a matter of course to order a fund thus situated to be brought into court and invested pending a suit for the distribution thereof. The part of the order which directs him to bring any other funds into court except those arising out of the certificates, or as compels him to submit to an examination before a master in relation to any other matters than as to this particular fund received by him in certificates must be reversed and annulled.

There is no sufficient cause shewn for taking out of his hands the general trust committed to him, as surviving exec-

utor of A. Gracie, on account of his alleged embarrassments in connection with his son's misfortunes in trade, as the affidavits clearly establish the fact that he has a very large estate over and above all debts and responsibilities. And the court will not, without evidence, presume that a gentleman who has sustained an unblemished character till he has arrived at the age of eighty, will, without any conceivable motive, destroy that reputation by defrauding those with whose property he has been entrusted as executor. Whatever may be his character for honesty and integrity, however, upon a bill for the settlement of his accounts as executor properly filed, by a person having a right to a portion of the fund, if there is a clear balance in his hands beyond what he has a right to retain he may be directed to pay such balance into court, and this without reference to the value of his own property. But the mere fact that the executor is an octogenarian, if he is in the full possession of his faculties, is not a sufficient reason for depriving him of the possession of that part of the estate of his testator upon which he has probable grounds of claim. The injunction in this case should therefore be dissolved, except so far as relates to the receipt of the money on the certificates, otherwise than through the clerk. The order of the vice chancellor last appealed from must be reversed to that extent; and the costs on that appeal, as well as his costs in the court below on the motion to dissolve, he must be permitted to retain out of the general funds in his hands not arising out of the French claims. There can be no objection to permitting him to receive and retain the balance due on the judgment against the insurance company. Upon the case as it now appears, either the complainants have no interest in that fund, or he has also an interest in it and has a preference by reason of his right of retainer. Or if, upon a new state of facts, the court should come to the conclusion that it was a part of the fund specifically pledged by the assignment, his property is still ample to secure to the other creditors their shares thereof. In case it should be adjudged to belong to the English creditors exclusively, his increased share of the

special fund which is to be brought into court will be an ample security to indemnify them against eventual loss.

This decision is to be without prejudice to the rights of the parties as to any of their equitable claims as against each other, either as to principal or interest, in the final settlement of the account; so that the executor may be charged with interest, as may be just, upon any monies in his hands from any source and which he has appropriated to his own purposes, if it shall in the end be found he was not entitled to such monies. Neither party is to have any costs on the first appeal, unless the appellant finally succeeds in his claim to retain for the whole amount of his debt out of the fund arising from the French claims. In that case he is to have the costs of the appeal and of resisting the application in the court below; to be paid out of that fund. (a)

(a) Upon appeal to the court for the correction of errors, in December 1837, the decree in this cause was so far modified as to declare that the creditors who accepted of the assignment and the covenant of A. Gracie had no equitable lien upon the fund arising from the French claims; and that N. Rogers therefore had a right to retain for his whole debt as against other debts of the same rank.