No. 51.—ASA HOLT, plaintiff in error, *vs.* THE BANK OF AU-
GUSTA *et al.* defendants.

[1.] It was agreed between H. and D. that if H. would give D. a letter of
credit, or authorize him to draw his bill on H. for the sum of $5,000, that
D. would invest the proceeds of the bill in cotton, and ship the same to
H. (who was a factor and commission merchant in Savannah,) and that
H. should have the control of the cotton, and dispose of the same, to meet
the bill.   Under this agreement, D. drew a bill upon H. for $5,000, which
H. accepted.   D. carried the bill to the Bank of Augusta, where it was
discounted, and the proceeds carried to the credit of D. on the books of
the bank.   Two days afterwards, D. died suddenly, and at his death, the
money raised on the bill stood to his credit in the bank.   In a contest be-
tween the acceptor H. and the creditors of D. *Held,* that at Law the money
raised on the bill became unconditionally the property of D. and at his
death passed to his administrator, to be applied to the payment of his
debts, according to due course of law.

[2.] That in Equity, under the agreement, there was no lien upon the money
in favor of H. but that in Equity, as well as at Law, it was the property of
D.'s estate, subject to a distribution among his creditors, as any other
property belonging to his estate.

[3.] Whether had D. lived, and invested the fund in cotton, according to his
agreement, there would not have attached upon it a lien in favor of H.
good against D. and all others claiming under him as volunteers, or with
notice, in a Court of Equity.   *Query?*

In Equity, from Richmond Superior Court.   Decided by
Judge STARNES.   January Term, 1853.

Asa Holt filed his bill in Equity, to the June Term, 1849,
of Richmond Superior Court, against Joseph Davis, adminis-
trator of Thomas Davis, deceased, and the Bank of the State
of Georgia, defendants, alleging, that in October, 1848, he
gave to Thomas Davis, then in life, a letter of credit author-
izing him to draw on said Holt for the sum of five thousand
dollars, upon the agreement of said Davis to invest the pro-
ceeds of said bill in cotton, and to ship the cotton to Holt,
(who is a commission merchant at Savannah,) who was to
control the cotton purchased, and dispose of the same to meet
the said draft; that Thomas Davis, in pursuance of this agree-

ment, drew his bill of exchange on Holt, for $5,000, and ne-
gotiated the same at the Branch Bank of the State of Georgia,
at Augusta—which sum was placed to the credit of said Da-
vis; that very shortly afterwards, on the 14th October, 1848,
Thomas Davis died suddenly, leaving $3,240.39, of the nett
proceeds of the bill of exchange, to his credit in said Bank,
the same never having been drawn out; that Davis, by his
sudden death, was prevented from purchasing and forwarding
the cotton; that the draft had been protested, and that the
estate of Davis was insolvent.   Joseph Davis, the administra-
tor, by his answer, admitted that the facts charged were true,
as he believed, and asked that such decree should be made as
would be conformable to law, and protect the interest of other
creditors.   In April, 1850, The Bank of Augusta, and other
creditors of Thomas Davis, filed their bill, charging that Jo-
seph Davis, the administrator, had combined and confederated
with Holt, to give him an undue preference; that under this
agreement, the bill above specified was filed, and the answer
made, admitting the facts.   The prayer was for an injunction
to restrain Holt from prosecuting his bill until the rights of
the other creditors could be ascertained, and that the fund
on deposit in the Bank of the State, should be paid over to the
adminstrator, to be distributed according to law, and for other
and general relief.

    The defendants answered this bill, and denied all fraudu-
lent confederacy, and moved to dissolve the injunction.   The
Court refused to dissolve the injunction, and a writ of error
was sued to this Court, upon that refusal.

    This Court affirmed the decision of the Court below, upon
the ground that although the fraud and combination were de-
nied, the other creditors of Davis would have a better oppor-
tunity of being heard upon the bill filed by them, than upon
Holt's bill, to which they were not parties.

    The answer of Holt to this bill, filed by the Bank of Augus-
ta and others, sets up the same agreement concerning the
draft, and the cotton to be purchased and shipped with its
proceeds, as is set out in the allegations of his own bill, above

mentioned. This bill was tried at the January Term, 1853, of Richmond Superior Court. Upon the trial of this case, the complainant read in evidence so much of the answers of the defendants as admitted the complainants to be creditors of Thomas Davis, and also read the pleadings in the case of *Holt, complainant, vs. The Bank of the State of Georgia*, and Joseph Davis, administrator of Thomas Davis, as pleadings, and closed their case.

The defendants then introduced, and relied upon as evidence in the case, the whole answer of the defendant, Asa Holt, as responsive to the bill. This answer, among other things, sets up the agreement between Holt and Thomas Davis, as follows: "That in the month of September, 1848, said Thomas Davis, then in life, applied to this defendant, and proposed verbally, that if this defendant would give him a letter of credit, or authorize him to draw his bill of exchange on this defendant for the sum of five thousand dollars, that he the said Thomas Davis, would invest the proceeds of the same in cotton, and ship the same to this defendant, (who is a factor and commission merchant in Savannah,) and that this defendant should have the control of said cotton, and dispose of the same to meet the said bill of exchange. That this defendant accepted the proposition of the said Thomas Davis, and gave him a letter of credit, &c. "That in accordance with the agreement and said letter of credit, the said Thomas Davis, on the 12th October, 1848, drew his bill, and negotiated the same; and that a portion of the proceeds of the said bill, $3,240.39, is now on deposit in the Branch Bank of the State of Georgia. The answer further states that Davis died suddenly on the 14th October, 1848, preventing him from complying with his agreement."

Defendants then proved by the Cashier of the Branch Bank of the State at Augusta, the draft drawn by Davis, and accepted by Holt, and the letter of credit referred to in the answer; they also proved that the proceeds of the draft were carried to the credit of Davis on the books of the bank, and

that the sum of $3,240.39, of the proceeds of said draft, remains to the credit of the said Davis.

The defendants also introduced Joseph Davis, as a witness, who testified that from his general knowledge of the business of his brother, Thomas Davis, he believed the facts stated in Holt's answer to be true; and that he heard a conversation between his brother and Holt in the month of May or June, before the death of Thomas Davis, in which it was agreed between them that Holt would accept drafts for Davis, the proceeds of which were to be invested by Davis in cotton, which cotton was to be consigned to Holt, to be sold for the purpose of meeting these acceptances; that Davis was to write specially to Holt for a letter of credit authorizing him to draw in the case of each draft he might draw. It was further proved by same witness, that Holt had no funds of Thomas Davis' in his hands when the draft given in evidence was drawn by Davis and accepted by Holt, and that the acceptance was for the accommodation of Davis, who was at the time indebted to Holt on previous transactions.

The defendants then offered to prove by same witness, the admissions and declarations of Thos. Davis, made to the witness, that the particular draft in question given in evidence in this case, was drawn by him under the same agreement with Holt, as before stated; that is, that its proceeds were to be applied by Davis to the purchase of cotton to be consigned by him to enable Holt to meet his acceptance of the draft. To which admissions and declarations of Thos. Davis to the witness, complainant's solicitor objected, unless made in the presence of Holt; and the objection was sustained by the Court, and the testimony ruled out. To this ruling defendants excepted and this is the first error now complained of.

The defendants then closed their case, and Judge *Starnes* charged the Jury in substance as follows:

That this bill, although filed for the purpose of enjoining the cause which was proceeding in the name of *Asa Holt vs. Joseph Davis, administrator of Thomas Davis, and others,* yet sets forth the statement that Holt, the defendant, has no

preferred claim to the fund and no lien upon it, and that it is distributable among the creditors of Thomas Davis. The answer, therefore, of the defendant, Holt, setting forth the character of the transaction between himself and Davis, which was the foundation of this draft, and setting up and basing thereon his preferred lien, is responsive to the bill. By so considering it, the whole question of the rights of the creditors to this fund could be on this trial heard and determined, and this the Supreme Court, in a decision made on one branch of this case, had intimated was the proper course. That defendant vested his claim on two grounds: first, that as an accommodation acceptor he has a right to have the fund in bank appropriated to the payment of the draft on which he was liable; and second, that by the agreement between Holt and Davis, the money raised by the bill was to be appropriated only in a certain way, say by investment in cotton, to be shipped to Holt, and that his acceptance was based upon that agreement; that a trust, therefore, attaches itself to the fund in controversy for the benefit of Holt; that upon the first point, without giving a speculative opinion as to whether Holt was technically an accommodation acceptor, it was sufficient to say, that if the evidence in the case shows that the fund in the bank is a part of the proceeds of a draft drawn by Thomas Davis on Holt; that it was carried by the bank to the credit of Davis; that this draft was drawn by agreement between Holt and Davis, and that by this agreement, the proceeds of the draft were to be invested in cotton by Davis, the cotton to be shipped to Holt, to be by him controlled and sold in the city of Savannah, he to take gains and profits by commissions on such sale of the cotton; then and in such case, he knew of no rule of Law or Equity which gives to Holt a lien or preferred claim on such fund; that the fund became the property of Thomas Davis when carried to his credit on the books of the bank, and could have been appropriated by him in his lifetime as he pleased, and the same right accrues to his administrator; that it was not a *trust fund:* to be treated as a trust fund, Holt should, from the beginning, have had a bene-

ficial interest in it; but it was not so.   The fund was exclusively the property of Davis, raised, it may be, by the credit of Holt, but still Davis' property; that had the fund been furnished by Holt, to be applied by Davis to a purpose specified, and which he had no right to use or appropriate in any other way, but which Holt had the right alone beneficially to enjoy, then it might be proper to treat it as a trust fund.   In short, that if the facts already stated by the Court be in proof, Holt had no right, in Law or Equity, to have this fund appropriated to the payment of said draft.

The Jury having returned a decree for the complainants, in accordance with the prayer of the bill, the defendant excepted to the charge of the Judge as erroneous throughout, so far as the merits of the case are considered, and upon these exceptions, and the one before mentioned, to the exclusion of certain testimony offered by defendant, errors are assigned to this Court.

WM. T. GOULD, for plaintiff in error.

A. J. MILLER, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] Upon the bill of exchange drawn by Mr. Davis upon Mr. Holt, the latter having accepted, became primarily liable to the holder.   Upon payment, being an accommodation acceptor, he has recourse upon the drawer, and of course will come in for his proportion of the estate of Davis, as any other creditor, according to the grade of his debt, whatever that may be.   When the bill was discounted by the Bank of Augusta, it being presented for discount by Davis, the money raised upon it became absolutely and unconditionally his.   Being passed to his credit on the books of the bank, and found there at his death, it passed to his administrator, and became, in his hands, subject to distribution among the creditors in due course.   Such is the disposition which a Court of Law would

Holt *vs.* The Bank of Augusta *et al.*

make of this money.    It is clear, therefore, that the acceptor, Holt, has no claim upon it, which a Court of Law will listen to for a moment.    Indeed, no legal claim is set up in his behalf; but coming into Chancery, he says, that by virtue of the agreement entered into between himself and Davis, he has a lien upon it which that Court will respect, and will apply it to the payment of his acceptance, to the exclusion of the creditors at large of Davis.    The question then, presented for our consideration is this :  has Mr. Holt such a charge or claim upon this fund, under the circumstances, as overrides the rules of Law applicable to it, and which will authorize a Court of Chancery to sieze and apply it to the satisfaction of the bill?    If there be upon it such charge—which I designate as an equitable lien—then there is no doubt but that the administrator holds it in subordination to that lien, and that it is competent for a Chancellor to decree its appropriation to the draft.    The claims of the law yields to the equitable lien.

[2.]  The lien claimed by Mr. Holt cannot spring out of any relation which he bears to other parties upon the face of the bill.    One of the counsel sought to raise an equity in his behalf, from the fact that he was an accommodation acceptor, occupying the position of a surety.    The idea that Courts will look favorably upon sureties may be conceded, but it has never been held that a surety, as such, has a special lien upon the estate of his principal.    They have the rights of creditors, and no more.    That their money, without any equivalent, has gone to increase the estate of their principal, raises, it may be, a natural equity, that it should be returned to them.    But this natural equity yields to the equity which general rules make necessary and have established.    Nor has it ever been held that an acceptor, when the money raised upon the bill, as in this case, is susceptible of identification, has, in Equity, a lien upon that money, because he accepted without funds of the drawer in hand, and without any interest whatever in the uses to which the bill or its proceeds was to be applied. Such holding would derange the entire system of the law merchant.    To maintain that system, is far more important to the

world, the commercial world more especially, than to relieve what seems to be an individual hardship. But it is not, in truth, a hardship, because an accommodation acceptor lends his credit with knowledge of his liabilities. He, in the judgment of the law, knows the law; and a liability knowingly and voluntarily incurred, cannot be called a hardship in a Court of Justice. Without farther comment upon this but slightly pressed view of Mr. Holt's equity, I pass on to more serious presentations of his cause.

Without a careful inquiry into the facts proven, we take the agreement between Holt and Davis, most favorable to the former, as it is set forth in his answer.

Mr. Holt, in his answer, says, "that in the month of September, 1848, Thomas Davis, then in life, applied to this defendant, and proposed, verbally, that if this defendant would give him a letter of credit, or authorize him to draw his bill of exchange on this defendant, for the sum of five thousand dollars, that he, the said Thomas Davis, would invest the proceeds of the same in cotton, and ship the same to this defendant (who is a factor and commission merchant in Savannah,) and that this defendant should have the control of said cotton and dispose of the same, to meet the said bill of exchange."

In pursuance of this agreement, and a letter of credit from Holt to Davis, Davis drew upon Holt for five thousand dollars, on the 12th October, 1848. Holt accepted, and the bill was discounted by the Bank of Augusta, and the proceeds placed to Davis' credit. Two days after the date of the bill, Davis died suddenly. At the time of his death, $3240.39 cts. of the money raised upon the discount of the bill, was standing to his credit at the Bank of Augusta, the balance having been drawn out by him. The bill at maturity was protested and remains unpaid. The demand of Holt is, that the $3240.39 be decreed to go in payment of the bill. We are unable to agree with the learned gentlemen of counsel for Holt, that under his agreement with Davis, and the facts stated, he has a lien upon this money. It is proper to note that Davis dying before any cotton was bought, the lien claimed is upon the money. The law applicable to consignor

and consignee, and the doctrine of stoppage in transitu, have, in my judgment, no place in this discussion. That is to say, the rights of these parties are not to be determined by them. There was no consignment made. Aside from the law and doctrine applicable to consignments, we are to inquire whether, under the agreement, the execution of it on the part of Davis, being prevented by his untimely death, there is a lien in Holt's favor, which a Court of Equity will enforce upon the money. It is well, too, *in limine*, to disencumber the question of a weight thrown upon it by the very able counsel for the plaintiff in error. It was said that Holt's equity is stronger and higher than that of the creditors of Davis, because he is an accommodation acceptor, raising the fund upon his credit, and bound at Law to pay the bill, without having received anything in consideration therefor, whilst they are volunteers, having no rights other than such as Davis himself had; and that, in a contest between equities, the higher and prior equity will prevail. It is true, that in a contest between equities, the prior and strongest equity will prevail; but this is not a case where the rule applies. There is no conflict here between equities. It is a contest between the *legal* rights of the creditors and one who claims an equitable right paramount. They plant themselves upon the *law ;* he upon a specific *equitable lien.* The question is not whether his or theirs is the strongest equity, but their rights at Law being conceded, whether he has an equity which masters and supersedes their legal rights. They set up no equity. He does set up an equity under the agreement, which he must rest upon, irrespective of their want of equity. If he fails to maintain this affirmative position, his right to prevail over them fails without more.

An analysis of the agreement, will show the intention of the parties, and its legal character. On the part of Holt it is agreed, in consideration of the use of the money in the purchase of cotton, and the consignment of the cotton to him, to meet the draft at maturity, that he will accept. On the part of Davis it is agreed, in consideration of Holt's acceptance, that he will, first, invest the money raised on the

bill in cotton ; and second, that he will consign the cotton to Holt, to be disposed of by him, to pay the draft at maturity. This is a species of transaction very common in our State, and intended to promote the interests of both parties. The drawer gets money to buy cotton and hopes to realize a profit on the purchase, whilst the acceptor, for the use of his credit, protected, as he supposes, by the consignment of the cotton to him, realizes the usual profits of a commission merchant on the operation. When the bill is drawn and accepted, and delivered to the drawer, it becomes his property, to be by him negotiated for cash, as in this case was done by Davis. Holt's part of the agreement was executed; Davis' was executory, and was not executed in consequence of his death. If Davis had lived, no doubt but that he would have complied with his contract in good faith.

Now, the first and vital inquiry in this case is, what was the intention of the parties respecting the money thus raised? Clearly, it was not that it was to be invested by Davis as trustee for Holt. By the operation of law upon the transaction, the property in it passed to Davis unconditionally. Holt reserved no interest in it, or control over it. Nor was there any stipulation that Davis should use it with accountability for interest or profits to Holt. As argued by the learned counsel for the defendant in error, if Davis had lived and the cotton had been bought, and a profit made on it, that profit unquestionably, would have been his ; so, if a loss had been sustained, the loss would have fallen upon him. In the fund, Holt had no interest, and how could he be the *cestui que trust* of that fund ? The truth is, the money never did belong to Holt : all that he advanced was his credit—all that he incurred was liability. The money itself belonged to the Bank of Augusta, and when that institution paid it to Davis for the bill, it became his money. To this day, Holt has paid no money to Davis and none on his account, for it appears from the record, that the bill is still unpaid. In the absence of any stipulation that the money when realized on the bill, should be held by Davis, as trustee for Holt, the idea of a trust is wholly unfounded ;

Holt *vs.* The Bank of Augusta *et al.*

for all the rules of law, as applicable to the argument, forbid a trust by implication. A Court of Chancery, then, is without authority to apply it to the protection of Holt, upon the ground of a trust created by the parties. In other words, this money does not, in Equity, any more than at Law, belong to Mr. Holt.

Nor, was it the intention of the parties, that Holt should have a lien upon the money to protect him from liability. The general objects of the contract, and also its express provisions, forbid any such construction. They had no purpose that it should be a stationary security against Holt's chances of loss on his acceptance. How absurd would it be for two intelligent gentlemen to contract together to raise money, to lie unemployed as a security for one of them, who had accepted the bill upon which it is raised. The intention was, that it should be used; nay, the express stipulation is, that it *shall be used* in the purchase of cotton. It was expected and intended that it should go into circulation and become incapable of identification. The contingency of Davis' death and of the identification of the money in the custody of the bank, was not contemplated. The contrary was contemplated. And shall it be said that the Providence of God in the death of Mr. Davis, has created a lien upon this fund, contrary to the intention of the parties? Or shall it be said that the accident by which this money is made capable of identification, creates rights which do not exist by the contract? It is by the agreement that the rights of Mr. Holt are to be determined, and not by an intervening act of God. If it be true that it was not the *intention* of the parties to give Mr. Holt a lien upon the money, it seems to me that his cause is at an end. He puts it upon the agreement. His counsel admits that if his equitable lien does not grow out of the agreement, it does not exist. It is a conceded point in the books, that a lien cannot arise where, from the nature of the contract between the parties, it would be inconsistent with the express terms, or the clear intent of the contract. *Randal vs. Brown,* 2 *Howard's T. C. R.* 424, 425, *and authorities there cited.*

I might rest this discussion here, but the importance of the case, in a commercial point of view, requires a fuller consideration of it. The argument of counsel labored to establish the position that, had the cotton been purchased with this fund, a lien would have been fixed upon that in favor of Holt, and therefore, by an equitable necessity, it attaches upon the fund, it being traceable and capable of identification.

[3.] And it was sought to strengthen this position, through the agency of Davis' agreement to invest it in cotton. Now, if Davis had lived, and the money had been invested in cotton, and Holt was here to enforce a lien upon it under this agreement, with proof of its identity, as a Chancellor, I would be constrained to hesitate before turning him away. I am not sure but that a Court of Chancery would respect his lien on the cotton, whether it had actually come into his possession or not, as against Davis, his representatives and third persons, who are volunteers, or who have notice. It is true generally, that if a lien be created by agreement on real estate or personal property, or money in the hands of third persons, Equity will enforce it against the party, or any one claiming under him voluntarily, or with notice, upon the ground that such an agreement creates a trust. Thus, if a debtor gives to his creditor an order upon a fund in the hands of a third person, it is an agreement that the debt shall be a charge upon that fund, and Equity will so decree. Or, if such an order is given upon a fund not realized, but in expectancy, when realized a lien attaches in Equity in favor of the creditor. Or, if a debtor consigns to his creditor, specific property, with instructions to apply it in payment, a lien attaches in favor of the creditor which Equity will hold good against other creditors, and the party himself, or his commissioners in bankruptcy. *Story's Eq. Jurisprudence*, §1231. *Collyer vs. Fallon*, 1 *Turn. & Rup.* 469 *to* 476. *Legard vs. Hoages*, 1 *Vesey, Jr.* 478. *Clark vs. Maran*, 3 *Paige*, 373. *Pra. in Chancery*, 174, 175. *Hossack & Blount vs. Rogers*, 6 *Paige*, 429. *Idem*, 18 *Wend.* 319. *Richardson vs. Rust*, 9 *Paige*, 244.

Whether, if cotton had been purchased with this fund, in pursuance of this agreement, this case would have fallen under these principles, may, however, admit of doubt. The contract to consign the cotton was executory; it was not to secure an existing debt, but to protect against a liability. When executed by the purchase of cotton, the thing came to be *in esse*, upon which the lien could attach. Perhaps the most serious doubt may arise out of the inquiry, whether the agreement consigning the cotton to Holt, was an agreement creating a lien, or merely a personal covenant to do the thing. We do not decide the question, for it is not necessary. I will only add, that in the case of *Fletcher et al. vs. Morey,* Judge *Story* protected an acceptor, under circumstances very much like those which would exist in this case, if Davis had lived and invested this fund as he agreed to do. (2 *Story's R.* 564.) The bill, in this case, asserted an equitable lien against certain shipments, and the proceeds thereof, in the hands of the assignee of James Read & Co. as security for advances made by the plaintiffs, under an agreement with James Read & Co. by which they were authorized to make drafts on the plaintiffs in payment for merchandize, the said merchandize being pledged and hypothecated to the plaintiffs, as collateral security for their advances. Judge *Story* on the Circuit held, that the lien was good against the assignee in bankruptcy of James Read & Co. Part of the merchandize so pledged and hypothecated, had come to the hands of James Read & Co. and part came to the possession of their assignee, after their bankruptcy; the whole being bought with money raised under the agreement, by bills by them drawn upon the plaintiffs, and by the plaintiffs accepted. The learned Judge held, that the pledge of the shipments was a charge *in rem* upon them, and binding as a lien upon the drawers of the bill and their assignee, who represented the creditors at large. But if it be admitted that Equity would protect Holt if cotton had been bought, I do not perceive how, from that concession, it would follow that a lien exists in the actual state of the case, on the money. The supposititious case is very different from the actual case. If

a lien would attach to the cotton, it is by virtue of the stipulation that the cotton should be consigned to Holt, to be controlled by him to meet the bill.    And a lien does not attach to the money, because there was no stipulation for a lien upon that.    The former would exist by contract; the latter does not exist at all, because as to it, there was no contract.    The lien on the cotton was, when Davis was in life, a possible thing; now that he is dead, it is an impossibility; whilst at no time, was the lien on the money a legal possibility.

Nor, is the truth of the case made different by any relation which the agreement to invest the money in cotton bears to the other agreement to consign the investment to Holt, as security. As we have seen, the money raised on the bill belonged to Davis ; there was on it no trust reserved, no lien stipulated for.    There was an agreement to invest it in cotton.    That agreement created no charge upon anything—it pledged nothing—it did not and could not create a lien.    It was a *naked personal undertaking*, for a breach of which, had Davis lived, Holt might have had legal redress.    That part of the contract became impossible after Davis' death.    The act of God made its fulfilment impossible.

Inasmuch as our ruling on the main question concludes the whole case, it is unnecessary to consider the other questions made in the record.

Let the judgment be affirmed,