## MOSELY ET AL. vs. LANE.

[BILL IN EQUITY TO ESTABLISH RESULTING TRUST.]

1. *Administrator's duties and liabilities—Resulting trust in lands purchased by him with funds of the estate and re-sold at a profit.*—An administrator is bound not to do anything which has a tendency to interfere with his duty in discharging the trust. His office is not conferred on him for the purpose of enabling him successfully to engage in intrigues for his private benefit. If he purchases land, or other property, with the money of the estate, and afterwards re-sells it at a profit, the benefit of the purchase enures to the estate, and not to himself individually.

2. *Estopped by his conduct from denying that the purchase was made with funds of the estate.*—Where an administrator agrees with his co-administrator that they will buy certain lands for the estate at the Government land sales, and in compliance with that agreement procures him to join in raising funds for that purpose, and charges the estate with the expense of raising those funds; and prevents his co-administrator and the only adult son of the decedent from attending the sales, by assuring them that he will buy the lands for the estate, and at the sales prevents other persons from bidding for them, by declaring that he had come there expressly to buy them for the estate; and by these means, and with these funds, buys the lands for a sum greatly below what he would otherwise have had to pay for them, and takes the title in his own name, and soon afterwards re-sells them for a large profit,— he is estopped in equity, as against those representing the estate, from denying that the funds belonged to the estate.   (Chilton, C. J., *dissenting.*)

3. *In whose favor trust enures.*—If the agreement was to purchase the lands " for the estate," and the administrators knew at the time that the estate was free from debt, the resulting trust enures to the benefit of the residuary legatees of the estate.   (Chilton, C. J., *dissenting.*)

4. *Decree.*—On the facts of this case, the administrator was charged with the amount for which the lands were re-sold, and was allowed a credit for the amount of the original purchase money paid by him, together with his expenses in attending the land sales and procuring title to the lands; and interest was given on the balance found against him.

APPEAL from the Chancery Court of Lauderdale.
Heard before the Hon. E. D. TOWNES.

THE original bill in this case was filed by John Mosely and William Mosely, in March, 1847, and an amended bill was filed in March, 1851. The material allegations of the two bills are as follows : That their father, William Mosely, died in Morgan county, Alabama, in the year 1830, after having

made and published his last will and testament in writing, which was duly admitted to probate after his death, and which (among other things) contained the following provision :—

"8. * * * * And whereas, by the provisions of an act of Congress of the United States, I have the right of taking up other lands by occupancy, and I have become the purchaser of eighty acres of land in the township of my late residence, being part of the sixteenth section in said township; I therefore will, that my executor and executrix (herein after named), out of my money and the proceeds of my perishable estate, pay out for said eighty acres what may be due thereon; and the remaining land to which I have the right of occupancy aforesaid, I hereby direct them to complete payment therefor, according to the provisions of said act of Congress. And it is my will, that all my real estate (consisting of the lands above described and directed to be paid for, six lots in the town of Decatur, and the land given to my wife during her life) shall be equally divided among my four sons, William, Hilary, John and Drury, to-wit; all the land and other real estate of which I may die seized and possessed to be so soon thereafter as convenient divided among my four sons immediately thereafter. I also will, that if either of my four sons should die before they arrive at the age of twenty-one years, the part of the land hereby bequeathed to him shall be equally divided among the remaining sons living. I will that all the rest and remaining part of my estate, of whatsoever nature or kind, which I may die seized or possessed of, not given heretofore in specific legacies, after the payment of my just debts and all expenses, I give and bequeath to my six youngest children—to-wit, William, Hilary, John, Drury, Elizabeth Ann and Sally Mosely, to be equally divided among them; and if either of them should die before they arrive at the age of twenty-one years, without issue, it is my will that the part of the one so dying shall be equally divided among those living of the six children, being the youngest last named."

The bill alleges that the executor and executrix named in said will refused to qualify, and thereupon letters of administration with the will annexed were, in the early part of the year 1831, granted to Isaac Lane and Jesse W. Garth,

the former of whom was the acting administrator and mainly attended to the business of the estate ; " that said Lane attended the Government land sales at Huntsville, in July, 1831, and, declaring that his object was to buy the lands hereinafter described for the estate of said William Mosely, did, with the means of said estate, purchase the following lands, all situated in Morgan county in said State—to-wit, the north-east quarter of section 15, in township 5, range 5 west, commonly called and known as the 'Ezekiel Owen quarter' ; the west half of the south-west quarter of fractional section 2, in same township and range, commonly called and known as the ' Bird quarter' ; and the north-west quarter of section 11, in same township and range—in all about 400 acres, for which said lands said Lane paid, out of the means of said estate, for 320 acres thereof $1,25 per acre, and for 80 acres thereof $1,34, or thereabouts, as complainants are informed and believe, and so charge. All of said lands, so purchased at said land sales in Huntsville, in July, 1831, for the estate of said William Mosely, had been previously relinquished to the Government of the United States by said testator, or by other persons ; but, as complainants are informed and believe, said lands were in possession of said testator during his lifetime."

The bill further alleges, that said Lane, within one year after said purchase at the Government sales, and during the minority of complainants, fraudulently sold said lands, pretendingly as administrator, but without any order or decree of the Orphans' Court, and without public notice, and purchased them himself for about $600, when (as complainants allege) they were worth from $4,000 to $6,000 ; that said Lane has never paid over to said estate, nor in any wise accounted for, the amount at which he bid off said lands at said fraudulent sale ; that in 1832, or thereabouts, said Lane resold said lands for between $3,000 and $5,000, thus making a large profit, for which he has never in any manner accounted.

It is further alleged, that said Hilary Mosely, one of the testator's sons mentioned in the residuary clause of the will, died after said testator's death, before arriving at the age of twenty-one years, and without issue ; that said Elizabeth Ann

and Sally Mosely have each married since said testator's death, and that they and their husbands, together with said William Mosely, refuse to participate in this suit, and are therefore prayed to be made defendants. Said Lane is also made a defendant, and the prayer of the bill is, that he be made to account to complainants for their proportion of the profits realized on the re-sale of said lands ; that to this end an account may be taken ; and for general relief.

In his answer to the original bill, Lane states that he entered for the estate of said Mosely all the lands to which he was entitled under the act of Congress ; that the lands above described were bought by him with his own money, in his own name, and for himself, in company with others ; that these purchases were made by him with his own means, and not in fraud of complainants' rights ; and he states the prices at which he purchased and afterwards re-sold. He also denies the alleged fraudulent sale and purchase by himself at $600, and that he ever said at the land sales that he was purchasing said lands for the estate. In his answer to the amended bill he states substantially the same facts ; and he afterwards amended this answer, by adding, " that he may have said, when he attended the land sales at Huntsville in 1831, that his object was to buy these lands, now made the subject of controversy in this suit, for the estate of William Mosely ; but he has no recollection of having done so, and if he did so, it was gratuitous, as he then had no funds of the estate in his hands to pay for them."

The evidence, so far as it is material to an understanding of the case as here presented, is substantially stated in the briefs and opinions, and therefore need not be here recapitulated. The chancellor, on final hearing, dismissed the bill, and his decree is now assigned for error.

L. P. & R. W. Walker, for appellants :

If the lands for which Lane is sought to be charged in this suit were subject to pre-emption by Wm. Mosely, the decedent, it was Lane's duty under the will to enter them ; and in that aspect of the case, complainants would be entitled to them as devisees. But if Lane bought them with the money of

the estate, the testator having no right of pre-emption in them, then he must account to complainants as legatees.

I. According to the acts of Congress, although the original certificates of purchase had been transferred by Mosely, and these lands relinquished by the transferrees ; yet, if Mosely was in possession of them when he died, his estate had the right of pre-emption.—Acts of Congress of March 31, 1830, and February 25, 1831.

All of these lands, except the north-east quarter of section fifteen, had been relinquished by Mosely or his transferrees, and were in Mosely's possession when he died, as Lane admits in his amended answer to the amended bill. On this state of facts, it is insisted for the appellants, that they were subject to pre-emption in favor of Mosely's estate ; that it was Lane's duty, therefore, under the eighth item of the testator's will, to enter them for the benefit of the devisees ; and that having purchased them for the estate, they enure to the benefit of said devisees.—Greene v. Moore, 1 Stew. & P. 212.

II. But however this may be, the complainants are clearly entitled, on the facts shown by the record, to recover as legatees. If a trustee lay out the money which he holds in his fiduciary character in the purchase of lands, and takes the conveyance to himself, the person entitled to the money may, at his election, charge the trustee personally, or follow the money into the land, and claim the purchase as made for him. Turner v. Petigrew, 6 Humph. 438 ; 1 White's Equity Cases, p. 178, and cases there cited. The only question here, then, is, whether equity will consider the purchase of these lands as having been made by Lane with funds held by him in his fiduciary character, or, in other words, whether the facts make out a case of implied trust in favor of the estate.

Lane was occupying a fiduciary relation, he and Garth being administrators, with the will annexed, of Wm. Mosely. He had agreed with his co-administrator to purchase these lands for the estate ; and in compliance with the agreement, a bill of exchange for $2,500 was drawn by Lane, and endorsed by Garth ; "and they sent Wm. Mosely," as Garth testifies, "to Nashville, to sell the bill to raise the money for the purpose of buying these lands. The bill was drawn for

more money than the administrators thought would be needed to pay for the land ; but it was agreed that Lane should use the balance of the money, and account for it. The cotton crop of 1831 was equal in value to the amount of the bill, and Lane afterwards bought the cotton crop of that year, and was to pay the bill." Before the land sales took place, Lane told others (including Garth, the legatees, and third persons) that he was going to the sales to buy these lands for the estate ; while at the sales, he prevented the competition of other bidders, by stating that he meant to buy them for the estate ; and after the sales were made, he stated that he had bought these lands, according to the previous agreement with his co-administrator, for the estate. The expenses of nego- tiating the bill of exchange were charged to the estate ; part of its proceeds was appropriated to the payment of these lands, and the balance (according to said previous agreement) used and accounted for by Lane individually. Upon these facts, will a court of equity now permit this administrator, after he has made a profit out of these purchases, to shelter himself behind the plea that the bill of exchange was not legally binding on the estate, and that he and Garth had no right to make it as a contract of the estate ? This would be suffering him to take advantage of his own wrong. His words and acts estop him from setting up this defence, and from denying that he held the funds in his fiduciary character as representative of the estate.—Brown v. Lynch, 1 Paige's R. 147 ; Brown v. Brown, 1 Strobh. Eq. 363 ; Harris v. Carney, 10 Hump. 349 ; Pegues v. Pegues, 5 Ired. Eq. 418 ; 1 Story's Equity, §§ 465, 322; 2 ib. §§ 1210, 1211a; English v. Lane, 1 Port. 328; 24 Ala. 380; Boyd v. McLean, 1 Johns. Ch. 582–90 ; Tench v. Leach, 10 Ves. 517 ; White v. Swain, 3 Pick. 365 ; Harrison v. Mock, 10 Ala. 185 ; 2 Wharton's Digest, p. 613, § 33; Page v. Page, 8 N. H. 187.

In cases of fraud, and where the proceedings have been *mala fide*, there is a resulting trust by operation of law. Robertson v. Robertson, 9 Watts, 32. Executors and admin- istrators are not allowed to derive a personal benefit from the manner in which they transact the business of the estate. Montgomery v. Givhan, 24 Ala. 583. Admitting that Lane advanced the money, yet, at the time, he intended that ad-

vance as a charge upon the estate. He afterwards bought the cotton crop of the estate, and, in consideration· thereof, then agreed that he would individually discharge the bill : what he had before held a charge on the estate, he then contracted to assume and pay off as a personal charge upon himself. Under these circumstances, equity will, at least, treat the pretended advance of money as a loan, and consider the land as purchased with the money of the estate.—1 Johns. Ch. 582 ; 4 *ib.* 118; 1 Russ. & My. 53 ; 2 My. & K. 819 ; 1 Paige's R. 885 ; 24 Ala. 580. It is not essential to a resulting trust that the money should, at the time, be technically and strictly the money of the *cestui que trust :* if the trustee treated it as such, and at the time it was used held the *cestui que trust* chargeable for its return, or intended that the security on which it was procured should at maturity be discharged out of the funds of the *cestui que trust;* this is clearly sufficient, especially if *mala fides* has intervened.—Authorities cited above.

The fact that Lane did not, in his settlement with the Orphans' Court, charge the estate with the bill of exchange, cannot avail him anything. The settlement was *ex parte,* being made without notice to any one ; and the omission of this bill as a charge against the estate was a clear afterthought, as is shown by comparing the dates of the settlement and the other transactions. Notice, too, that the cotton crop of 1831 is not accounted for until January, 1834, which was after the re-sale of the land.

WATTS, JUDGE & JACKSON, *contra :*

I. If Lane is liable at all to the complainants, it is because of a resulting trust in favor of the complainants, growing out of the facts connected with the purchase of the lands described in the bill. In order to determine this question properly, we must first see what is necessary to constitute such a trust. The whole foundation of such a trust, is the payment of the money by the *cestuis que trust.*—See Moore v. Jackson, 6 Cowen 726 ; Botsford v. Burr, 2 Johns. Ch. R. (m. p.) 409, and the authorities there cited ; Steere v. Steere, 5 *ib.* 20;—see all the cases bearing on this subject collected in White's Leading Cases in Equity, (Law Lib. edit.) on pages 175-6-7, in comment on Dyer v. Dyer.

Mosely et al. v. Lane.

If a party, who sets up a resulting trust, cannot show that he paid the purchase money, or that the money used in making the purchase was his; he cannot by parol proof show that the purchase was made for his benefit, or on' his account.—See authorities above cited, and White v. Carpenter, 2 Paige 238. Payment by the *cestuis que trust* must be clearly proven to have been made before or at the time of the purchase.—Boyd v. McLean, 1 Johns. Ch. 590, and the authorities cited above; and particularly the authorities cited in White's Leading Cases, on pages 175–6–7. The same doctrine is maintained in Givhan v. Montgomery, 24 Ala., as well as in the case of Harrison v. Mock, 10 *ib.* But in these cases, the persons against whom the trust was set up and maintained had the money of the *cestuis que trust* in hand at the time of the purchase, and declared the trust at that time. A resulting trust will never be raised in fraud of a legal duty, or of the laws of the land.—See Legget v. Dubois, 5 Paige 117. It would have been a violation of the duty of Lane, as administrator of Mosely, with the will annexed, to have used the moneys of the estate in purchasing the lands. It would have violated the will of his testator, because thereby the daughters of Mosely would have had their shares diminished, and the sons theirs increased, contrary to the intentions of the will of the testator, Mosely.

II. In this case, the facts clearly prove that Lane had no funds of the estate, much less of the complainants, in his possession at the time of the purchase, and never, at any time, appropriated any of the funds of the estate to the purchase of these lands. He had no funds of the estate in hand. He accounted for every dollar he ever had. He was under no legal obligation, without funds of the estate in hand, to purchase any lands. He had no authority to charge the estate by any contract of his, to raise funds.—McEldery & Chapman v. McKenzie, 2 Por. 33. The estate of Mosely was never charged with the funds raised on the bill of exchange discounted in Nashville. The only amount with which the estate was charged, was the amount used in paying for the two quarter-sections, under the act of Congress, as directed by the will. Lane could not charge the personal estate of Mosely with the payment for the lands, the proceeds of the

sale of which are in controversy, without manifest injustice to the daughters of Mosely. The will of the testator forbids it. Lane actually paid for, and completed the title to, all the lands he was authorized to purchase and perfect title to, by the will of testator; and these lands thus paid for have been divided amongst the complainants and their brother, and they have for years been in possession of them. They are, therefore, estopped from all further claim to the lands, or their proceeds, now in controversy.

But, it is said by the opposing counsel, that Lane is estopped from denying that the funds derived from the bill of exchange discounted in Nashville, belonged to the estate? Why? Who has been deceived by his declarations in this respect? There is not the semblance of an estoppel here.— Steele v. Adams, 21 Ala. 535, and authorities there cited.

III. Only two of the heirs of the deceased (Mosely) file their bill, insisting that the proceeds of the lands, or profits of the sale, ought to go to them and another brother. Now, if there is any trust at all proven, it is for all the children of Mosely ("for his estate"), and not for the male children alone; and for this reason, if for no other, the complainants are not entitled to a decree.

IV. It is clear from the proof, that Lane has not been benefited by the purchase of these lands. Whatever profit was made, was given as a mere gratuity to the daughters of Mosely.

RICE, J.—An administrator is bound not to do anything which has a tendency to interfere with his duty in discharging the trust. His office is not conferred on him for the purpose of enabling him successfully to engage in intrigues for his private benefit. If with the money of the estate, he buys property, and thereby makes a profit, the estate is entitled to it, although the estate could not possibly have been injured by his use of the money. If, with his own money, he buys up the debts of the estate at an under-value, the advantage thus derived does not belong to him, but to the estate, although, before he bought them up, the estate was bound to pay the full amount of those debts. The just and settled policy of the law is, to deter him from placing himself in a situation

which gives him a *bias* against the discharge of his duty, and to shield him from temptation, by destroying every allurement to faithlessness or fraud.—Montgomery v. Givhan, 24 Ala. R. 568.

The mere fact of his being administrator does not, *per se*, disable him as an individual from buying, *bona fide*, with his own money, property to which the estate has no right. But when he agrees with his co-administrator, that they will, at the Government land sales, buy certain lands for the estate ; and in compliance with that agreement, procures him to join in raising the funds for that purpose ; and charges the estate with the expenses of raising the funds ; and prevents his co-administrator, and the only adult son of the decedent, from attending the land sales, by assuring them that he will buy the lands for the estate ; and at the sales prevents other persons from bidding for them, by declaring that he had come there expressly to buy them for the estate ; and by these means, and with these funds, buys the lands for a sum greatly below what he otherwise would have had to pay for them ; and takes the titles in his own name, and soon afterwards sells them for large profits,—he cannot retain these profits. His doing so, under a claim that they belong to him, is a fraud, against which a court of equity has power to relieve. 1 Story's Eq. Jur. § 256 ; 2 *ib*. §§ 781, 1265 ; Story's Eq. Pl. § 767 ; Gaither v. Gaither, 3 Maryland Ch. Decisions, 158 ; Sweet v. Jacocks, 6 Paige's Ch. R. 355 ; Brown v. Lynch, 1 *ib*. 147 ; Lillard v. Casey, 2 Bibb's R. 459 ; McDonald v. May, 1 Rich. Eq. R. 91 ; Johnson v. Kay, 8 Humph. R. 142 ; Haywood v. Ensley, *ib*. 460 ; English v. Tomlinson, *ib*. 378 ; Montgomery v. Givhan, *supra;* Story on Agency, § 211 ; Barkelew v. Taylor, 4 Halsted's Ch. R. 206 ; Benson v. Heathorn, 1 Y. & Coll. C. C. 326 ; Fawcett v. Whitehouse, 1 Russ. & Mylne, 132, and notes ; Lees v. Nuttall, *ib*. 53, note 1.

We think it is sufficiently proved, that Lane, as the active administrator, had control of a large amount of property of the estate ; that he and his co-administrator, Garth, knowing that the estate in 1831 was free from debt, and that the cotton crop of the estate of that year would be worth more than $2,500, agreed to buy the lands described in the amended

bill for the estate ; that to make this purchase, they drew the bill of exchange for $2,500; intending at the time that its proceeds should be used, as far as was necessary, in purchasing said lands for the estate, and also intending that said bill of exchange should be paid out of the property, or cotton crop of the estate, over which they had control ; that the expense of getting the bill negotiated were charged to the estate by Lane ; that the lands were bought by Lane, and paid for out of the proceeds of said bill, according to their aforesaid agreement and intention ; that Lane did make the purchase of said lands at the Government sales in July, 1831, for the estate ; that he, by agreement with Garth, did take the cotton crop of the estate, which was of greater value than said bill, and agreed to pay the bill, and did pay the bill after so taking said cotton crop ; that Lane, by his line of conduct and declarations in relation to said lands, did induce Garth and young William Mosely, and others who had and felt an interest in causing these lands to be bought for the estate, to believe that he (Lane) would attend the land sales and buy them for the estate with the proceeds of said bill ; that Lane thus influenced the conduct of Garth and young William Mosely and others, to the prejudice of the residuary legatees ; that Lane, at the land sales, declared he was buying said lands for the estate, and thus prevented competition ; that by Lane's declarations before the sales, that he would go and buy the lands for the estate, Garth and young William Mosely were misled and prevented from taking other measures to have the lands bought for the estate ; that by such means, which more fully appear in the record, Lane at the Government sales became the purchaser of the lands, at a grossly inadequate price, and has so dealt with them since as to make large profits out of them, which he now claims as his own property.

Under all the circumstances disclosed in this case, we hold that Lane is estopped, as against the complainants, from saying that the proceeds of said bill of exchange, which he used in purchasing said lands at the Government land sales, in July, 1831, were not then held and used by him as the funds of the estate. In this suit, as against Lane, we must take it as established beyond denial by him, that said purchase of

said lands was made with funds held and used by him at that time as the funds of the estate. Any other construction would enable him to consummate a fraud. It is but sheer justice to apply the doctrine of *estoppel* in this case.—Dezell v. Odell, 3 Hill's (N. Y.) Rep. 219; 1 Greenlf. Ev. §§ 27, 207, 208; Barkelew v. Taylor, 4 Halsted's Ch. R. 206; McDonald v. May, 1 Rich. Eq. R. 91; Sweet v. Jacocks, 6 Paige's Ch. R. 355; White & Tudor's Leading Cases in Equity, vol. 2, part 1, pp. 560–62.

The case, thus viewed, is stripped of its greatest difficulty. " It is the ordinary case of a trust created by one person for the benefit of another, without his knowledge, and accepted by such other person upon being notified of such trust. Such a trust is not prohibited by statute. It belongs to what Chancellor Kent calls ' that mysterious class of trusts arising or resulting by implication of law,' and which the legislature have left ' undefined and untouched.' Such trusts arise from *the obvious intention of the parties*, though not expressed in the instrument with which they are connected; or *they are forced upon the conscience by the manifest justice of the case.*" " Such trusts must be recognized and enforced, from the very necessity of the case, in order to prevent the grossest injustice. A party will not be allowed, in a court of equity, to shelter himself from responsibility for a fraud, under cover of a statute to prevent frauds.—Hosford v. Merwin, 5 Barb. Sup. Ct. Rep. 41; Benson v. Heathorn, 1 Y. & Coll. C. C. 326; Fawcett v. Whitehouse, 1 Russ. & Mylne, 132; Page v. Page, 8 New Hamp. R. 187; White & Tudor's Leading Cases, vol. 2, part 1, pp, 560, 561.

Upon the pleadings and proofs, we think the complainants were clearly entitled to a decree.—Sweet v. Jacocks, 6 Paige's Ch. R. 355; Tompkies v. Reynolds, 17 Ala. R. 109; McDonald v. May, 1 Rich. Eq. R. 91; and other cases *supra.* We will now indicate to what extent relief should be granted.

If, after said purchase at the land sales at Huntsville, Lane settled with the Orphans' Court for the entire value of the cotton crop of the estate of 1831, and did not in any manner, in his settlement, charge the estate with anything on account of said lands, except the expenses of getting said bill

of exchange sent to Nashville and negotiated, then, in this case, he ought not to be charged with the entire prices for which he sold said lands at private sale, and interest thereon, but there should be deducted therefrom the amounts paid by Lane for said lands whilst he was at the land sales at Huntsville, in July, 1831, as those amounts are stated in his answer. In other words, Lane ought to be held liable for *the net profits* made out of said lands, and interest thereon. In estimating *the net profits,* Lane must be held chargeable with the prices at which he made the last sales of said lands, whether he has ever received those prices or not, unless he shows that they never could have been collected ; and he must be credited with whatever sum he was compelled to pay to get the title to said lands, unless he has heretofore obtained a credit therefor. Interest must be allowed on the balance against him.

It appears that the administrators spoke of the cotton crop of 1831, as the cotton crop of the estate. It is evident that, under the will, the estate being wholly free from debt in 1831, that cotton crop really belonged to the residuary legatees, and that the administrators knew this to be so. The expenses of getting the bill of exchange negotiated were charged to the estate. This was equivalent to charging those expenses to the residuary legatees ; for thereby the residuum to which they were entitled was diminished. These circumstances serve to show, that when Lane and Garth agreed to buy the lands *for the estate,* they meant for *the residuary legatees,* who under the will were entitled to every portion of the estate not specifically devised or bequeathed. The complainants are two of five surviving residuary legatees ;—the other three, who refused to join in prosecuting the suit, are made defendants. The administrator of the only other residuary legatee mentioned in the will, is made a party defendant ;—that other legatee having died intestate, before arriving at lawful age, and without issue, his share under the residuary clause belongs to the five surviving legatees. Upon the case as presented, the complainants are entitled, as against Lane, to have the net profits arising from the lands described in the amended bill, on his re-sale of them, treated as part of the estate of the testator ; and they are therefore entitled to a decree for two-fifths of those profits and interest,—the profits to be ascertained as hereinabove indicated.

Mosely et al. v. Lane.

The decree of the chancellor in this case is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. Lane must pay the costs of this court.

CHILTON, C. J.—It is certainly true that a trustee is not permitted to make gain to himself out of his fiduciary relation, beyond a reasonable compensation for his services; and while I agree with what my brethren have said upon this subject, I do not think the subject-matter of this suit, *as disclosed by the allegations of the bill,* and shown by the proof, brings it within the influence of this principle.

The complainants must not only make a good case by their bill, but they must, at least substantially, prove the case which they do make, if their allegations are denied by the answer. They proceed here upon the idea of resulting trust —that their funds have been used by the executor, Lane, in the purchase of land, which he has sold, and from which he has derived a profit; which profit, they insist, they have a right to pursue and recover. But the proof shows, that the funds which were used in the purchase, were not the funds of the estate. They were borrowed in Nashville, Tennessee, upon the personal responsibility of the executors—upon a bill, for the payment of which the estate was in no wise bound. It may be that this debt of the executors was paid out of the funds of the cotton crops raised by the estate. This, however, would not, in my opinion, change the principle and convert that into a resulting trust which before was no trust. It is sufficient, in the aspect in which the bill presents the complainants' case, to show that the funds with which the land was purchased did not belong to the estate.

But it is said the complainants should recover upon the doctrine of estoppel; that Lane said he would buy the land for the estate, and thus prevented his co-executor and the adult heirs from making the purchase for its benefit. It is, in my conception, a conclusive answer to this view, that neither of these persons had any authority to invest the funds of the estate in such purchase. If they had done so, it would have amounted to a tortious conversion of them, for which they would have been liable. The will of the testator forbade the use of the funds in this way, and it was the duty of the

executors faithfully to carry its provisions into effect. So that to hold Lane liable for the proceeds of the land, it must come to this:—If one party threaten to convert funds of an estate, by reason of which another is prevented from doing it, the party who threatened or said he would do so, must be held accountable as though he had done it. Although he has repented and complied with the law, yet, as he said he would not comply, he must be treated as though he had not, and estopped from showing that he has.

It is not pretended that Garth or William Mosely would have purchased the land with their private funds for the estate, and have made a donation of it. It must be assumed, then, that they contemplated using the funds of the estate. This they had no right to do, and so they have been prevented from doing nothing which the law allowed them to do, by the declarations of Lane. So far as the record discloses, Lane has accounted for the funds of the estate. The small sum allowed him as expenses for sending to Nashville for funds, a part of which was used in the purchase of the land in dispute, should properly have been divided between himself and the estate, in proportion as the money was shared between them and it; the record showing that a portion of it was used in paying for land required to be purchased by the will. But this can have no influence upon the case before us, except as tending to show whose funds were used in buying the land mentioned in the bill.

But, finally, there is another substantial reason for refusing this relief, conceding the foregoing views to be untenable. It is this—the promise was " to purchase for the estate." The bill is filed by some of the residuary legatees. These profits sought to be recovered, are clearly no part of the estate proper which can pass under the will. They could not have been within the contemplation of the testator. Yet, by the decree of this court, they are made to pass under the will to the residuary legatees.

These are some of the reasons which compel me to dissent from the opinion of a majority of the court. In legal contemplation, the estate has not been injured by the failure of Lane to convert the funds after he had declared he would do so, and hence no principle of estoppel can be invoked to hold

him to his declaration. Neither has he taken anything from the estate to which it was entitled, by making the purchase in his own name, and for his own account. The bill fails to show that he prevented a gift or donation from being made to the estate, but merely that *he prevented* a speculation with the funds of the estate, which the law would not allow, and which, in other hands, may have proved disastrous instead of profitable.