SAMUEL RUFFIN and others v. C. B. HARRISON and others.

## Trusts and Trustees.

1. Where the simple relation of debtor and creditor exists and the same person representing both, is to pay and to receive, the possession of assets which ought to be applied to the debt, is in law an application.

2. Where one is clothed with a double fiduciary capacity and the balance remaining upon a full execution of one trust belongs to the other, if the amount has been definitely and authoritatively ascertained and the fund is then in the trustee's hands, the law makes the transfer.

RUFFIN v. HARRISON.

3. If the first trust is not closed, although the trustee may have rendered an account which has not been passed on by a competent tribunal, the fund remains unchanged and is held as before.

4. The trustee may, by an unequivocal act indicating the intent, elect to hold the fund in possession in another capacity, and it will be thereby transferred.

(*Muse* v. *Sawyer*, Term Rep., 204; *Chaffin* v. *Hanes*, 4 Dev., 103; *Moore* v. *Miller*, Phil. Eq , 359; *Dozier* v. *Sanderlin*, 1 Dev. & Bat., 246; *Clancy* v. *Dickey*, 2 Hawks, 497 ; *Harrison* v. *Ward*, 3 Dev., 417 ; *Graham* v. *Davidson*, 2 Dev. & Bat. Eq., 155 ; *Wilborn* v. *Gorrell*, 3 Ire.. Eq., 117 ; *State* v. *Brown*, 68 N. C., 554, cited and approved.)

CIVIL ACTION heard upon exceptions to the report of a Referee at Fall Term, 1878, of FRANKLIN Superior Court, before *Kerr, J.*

This was an action brought by the sureties upon the bond. of C. B. Harrison, guardian of Lee A. Jeffreys, (now Brown), against Harrison and the sureties upon his bond as administrator of McKnight, and also against Mrs. Harrison and other purchasers of the land of McKnight, sold by Harrison, as administrator, to make assets. Pending the action Harrison died and his administrator was made a party.

The sureties upon the guardian bond having been declared by the court in *State ex rel. Harris* v. *Harrison and others*, 78 N. C., 202, primarily liable to the ward for the amount which ought to have come into the hands of her guardian (for the most part from McKnight's estate,) prosecuted this action to indemnify themselves by charging the administration bond with certain proceeds of the lands of McKnight sold by Harrison to make assets, alleging that he wasted the same while they were in his hands as administrator, and before he received them as guardian. They sought also to charge certain lands purchased by Mrs. Harrison with the debt due by McKnight's estate to Lee A. Jeffreys, alleging that the said debt had never been paid, and that Mrs. Harrison had not paid for the lands conveyed to her.

14

The case was referred to R. H. Battle, Jr., and was heard upon exceptions to his report. The facts necessary to an understanding of the case will be found in the opinion and in the case of *Harris* v. *Harrison*, 78 N. C., 202.

The exceptions to the report were overruled, and both sides appealed.

*Messrs. E. G. Haywood* and *Reade, Busbee & Busbee,* for the plaintiffs.

*Messrs. D. G. Fowle, Davis & Cooke, Lewis & Strong* and *W. F. Green,* for the defendants.

SMITH, C. J. By a decree of the court of equity of Franklin county, rendered at spring term, 1868, Lee A. Jeffreys, an infant, was adjudged the sum of $5,997.86 and interest on $5,895.65 principal money thereof, from the 6th day of April of the same year, due from her deceased guardian, Alexander McKnight, and recovered the same against Carter B. Harrison, his administrator with the will annexed. The personal estate of the testator being insufficient to discharge his indebtedness, the administrator filed a petition in the superior court of Franklin against the devisees under the will, and the said Lee A Jeffreys and other creditors to have the debts ascertained and determined, and for license to sell and convert the devised lands into assets for the payment thereof. There was an order of reference and report made and a decree ordered confirming the same at fall term, 1872. The decree declared the testator to be indebted to :—

1. Lee A. Jeffreys in the sum and with the interest specified in the said decree of the court of equity.

2. Mary L., wife of O. L. Ellis, in the sum of $1,822.19 and interest on $1,013.65 from Sept. 11, 1871.

3. The said Mary L. and Penelope J. Egerton in the joint sum of $3,762.78 and interest on $2,678.14 from same date,

the former being entitled to one-third and the latter to two-thirds thereof, and

4. Margaret F. Harrison in the aggregate amount of $2,-363.73 and interest on $1,932.50 as above. The said indebtedness being incurred in the management of several trusts committed to the testator, and that there was in the administrator's hands $1,773.01 of the unadministered personal estate applicable to the debts.

The court thereupon granted license to sell the lands and directed " that the debt due to the defendant, Lee A. Jeffreys, be first paid in preference to all other debts herein declared," and the other creditors. to be paid *pari passu* out of the residue.

On the 28th day of October, 1871, the administrator made sale of a large part of the testator's lands, on a credit as to most of the purchase money, and applied what was received in cash to the costs and charges attending the proceedings. Under a subsequent decretal order he sold the remaining lands, except the dower estate allotted to the widow, and appropriated the proceeds to the other unpreferred debts recited in the decree.

On the 7th day of November, 1871, the said C. B. Harrison was appointed guardian to the infant Lee A. Jeffreys, and gave bond in the usual form with the plaintiffs as his sureties. He continued to act as such until his removal·by the probate judge for default in not renewing his bond. During .the interval ·between his appointment·and removal, divers large sums of money came into his hands from the sale of the land, which with the balance due upon the administration of the personal estate, were more *than enough*, *if so applied* as directed by the decree, to discharge the entire debt due his ward.

The guardian charges himself as such with the moneys collected by him as administrator in the successive returns made next thereafter, as well as with certain other sums, in

exoneration of his administration bond. The referee allows a credit for $1,773.01 upon the ground that he had more than this sum on deposit in bank, both when the decree was made and when he elected to hold the same as guardian in his first official return. But he refuses to give this effect to moneys afterwards received from sales of the land and so charged in subsequent returns, because he had not then the funds to make the attempted transfer valid and operative.

If the legal consequences of receiving assets of the testator, as his administrator, applicable and by the decree ordered to be applied to the debt due the infant of which the right and duty of collection devolved upon the same person, as guardian, is *ipso facto* a payment of the debt, the liability for subsequent mismanagement and waste is shifted from the administration to the guardian bond, and the sureties to the former are discharged. The refusal of the referee so to hold furnishes the principal exception to the report, the decision of which may dispose of all others, since if the loss primarily falls upon the sureties to the guardianship, an examination into the equities subsisting among the other parties becomes wholly unnecessary. The question is one strictly of law, and we proceed to consider it.

The decree, ascertaining what was due the infant from the testator, closes the trusts of the prior guardianship and definitely fixes the sum due from the testator to his ward. The subsequent suit to make the real estate assets reaffirms the indebtedness and requires it to be paid out of the first moneys coming into the administrator's possession. When Harrison became guardian, the debt was payable to him, as representing his ward. Thus the obligation to pay and the right to receive were united in one and the same person, and in such cases the law makes an appropriation of the funds when received to the discharge of the debt and the enlargement of the creditor's estate.

The rule is well established in its application to the rela-

tion of debtor and creditor, as we think an examination of the authorities referred to in the able and exhaustive argument of counsel will abundantly show. We propose to examine the cases somewhat in detail as most conducive to a satisfactory solution of the question involved.

In *Muse* v. *Sawyer*, Term Rep., 204, the material facts were these: One Horniblow became indebted to Ramsay by bond executed on the 15th day of June, 1798: Ramsay died in September, 1799, before any payment on the debt, leaving a will, wherein he appointed the plaintiff and Alexander Millen his executors. Horniblow died in October following intestate, and administration on his estate was granted to said Millen and one Blount. Blount died soon after, and Millen, the survivor, received assets from Horniblow's estate. In June, 1802, he endorsed one, and in January following another credit on the bond. Millen died in 1807, leaving assets of his intestate applicable and sufficient in amount to pay the residue of the bond, and his executors delivered the bond to the plaintiff, the surviving executor of Ramsay, and paid the assets of Horniblow to the defendant, his administrator *de bonis non.* RUFFIN, J., after noticing the distinction in cases where the creditor appoints his debtor his executor, and where he becomes administrator by the action of the court, and the different legal consequences resulting therefrom, proceeds to say: "Upon the second question, I am of opinion with the defendant upon the ground *that sufficient assets of Horniblow's estate* came to the hands of Millen to discharge the debt, and that it was entitled to have them applied in due course of administration. It is not necessary that Millen should actually, by endorsement on the bond, or other similar act, have applied Horniblow's assets in discharge of this debt, in order to its extinguishment. *As soon as the assets came to his hands, the law made the application of them and the debt became extinct instanter."* 

Thus it was decided that the debt was satisfied and the

plaintiff could not recover, notwithstanding the funds, which should have been used in payment, were not thus disposed of, and had been delivered over to the administrator *de bonis non* of the debtor.

This case was followed by *Chaffin* v. *Hanes*, 4 Dev., 103, the facts of which were not dissimilar. The plaintiff held a bond executed by W. W. Chaffin as principal and the defendants as sureties. Chaffin died intestate, and the plaintiff became his administrator and collected assets of his intestate's estate adequate to pay this and all other bond debts due the plaintiff. It was held in the court below that the debt was discharged, and evidence, offered to prove the existence of other bond debts of the intestate to which the plaintiff was his surety and that the assets had been used in paying them, was refused. This court sustained the ruling, approved the decision in *Muse* v. *Sawyer*, and RUFFIN, C. J., delivering the opinion remarks: "When the debt becomes extinct by reason of the receipt of assets, it is extinguished *for all purposes* and *as to all persons* as well co-obligees as the heirs of the deceased obligors, for says LORD HOLT in *Wankford* v. *Wankford*, (Salk. 305,) having assets amounts to payment, and another obligor in the bond cannot be sued. Being thus extinguished, it can never be revived by any subsequent acts of the administrator, such as the application of the assets to other debts of inferior dignity, or even of the same dignity, falling due or acquired by him, after the assets were legally applicable, *and had been by the law applied to this bond.*"

In the case before us it is proposed to continue in force the obligation of the testator, determined by the decree, and the liability of the sureties to the administration bond therefor, after assets of the principal debtor sufficient to pay the same have gone into the hands of the guardian, not only applicable but required by the decree itself to be applied to

the debt. In this common feature the cases are scarcely distinguishable in principle.

In *Moore* v. *Miller*, Phil. Eq., 359, PEARSON, C. J., after commenting on the act of 1794, which declares that "the appointing any person executor shall not be a discharge of any debt or demand due from him to the testator," uses this language: " At common law if a creditor is appointed administrator or executor of his debtor, he not only has a right to retain in preference to any other creditor of equal degree on the ground that his right of action is suspended, but he is *presumed to retain the moment he receives assets* and the *debt is extinguished,* so that he cannot apply the assets to another debt and sue another obligor on the debt due to himself," —citing *Chaffin* v. *Hanes.* He declares further that the act simply abolishes the distinction between executors and administrators and "puts them upon the same footing." It leaves, therefore, untouched the rule of retainer, applicable to both, which at once appropriates assets received to the debt due and extinguishes it.

In *Smith* v. *Watkins,* 8 Hump., 331, the same doctrine is strongly asserted, and the court, after quoting from 3 Bl. Com., 18, and other elementary works, say : " These authorities establish that the reception of assets by an executor extinguishes his debt. He holds the goods in satisfaction of his debt and not as executor. The debt is paid, the operation of law being equivalent to a recovery by execution." * * * "If he pay out the assets and do not actually retain for his own debt, it is his folly, for by a conclusion of law he is held to have retained. For, as the court say in *Dorchester* v. *Webb,* Cro. Car., 373, as he may retain he shall do so. There is no act to be done by an executor to constitute a retainer, no volition on his part as to whether he will retain or not ; but the moment he receives assets sufficient to discharge his debt, the law applies them in payment and the debt becomes extinct *instanter*."

The rule has been so far extended as to embrace the case of an administrator *durante minore ætate,* who may retain alike to satisfy a debt due the infant and one due to himself personally. W'ms Ex'rs, 942; *Hosack* v. *Rodgers,* 6 Paige, 415.

The cases relied on mainly for the plaintiffs are cases of double trusts resting upon the same person, and do not impugn the principle as affecting the simple relations of creditor and debtor, to which class that now under consideration belongs.

In *Dozier* v. *Sanderlin,* 1 Dev. & Bat., 246, it was held that when an administrator married one of the next of kin of the intestate who was entitled to a distributive share in the estate, and upon the wife's death, administered also on her estate and had assets applicable to the payment of the distributive share, the law made the appropriation and the share was satisfied therefrom, and the court say : " When a retainer is allowed and the party has assets, it is an extinguishment upon the principle that the same hand is to pay and to receive."

In *Clancy* v. *Dickey,* 2 Hawks, 497, the executrix, Elizabeth Shutt, took possession of certain slaves bequeathed to herself and her children, to be kept in common and the share of each child separated and assigned as they respectively arrive at age ; and the defendant, Dickey, guardian of a legatee, married the executrix and removed out of the state, carrying the slaves with him. In an action on the guardian bond, TAYLOR, C. J., says : "As the testator appointed his wife one of the two executors of his will, it was reasonable to expect that the negroes should be kept together by her as executrix, as long as it was lawful to detain them in that character, viz: two years, and that after that period she would become guardian to the children and keep them together as such, till one of them came of age or married. The reason then is much stronger for considering Dickey's possession as that of a guardian than as executor, and the con-

dition of the bond is consequently broken, if Nancy Shutt, the orphan, has a vested legacy in her share;" and it was declared the relator did have a vested estate therein.

In *Harrison* v. *Ward*, 3 Dev., 417, it was held that the condition of the administration bond was not discharged by the rendering an account current of the administration and showing the balance due the plaintiffs, for that he was also their guardian and that this balance was not transferred to the trusts of the latter office. Chief Justice HENDERSON thus lays down the general rule: "When a person has two or more capacities in which to take and hold, and takes and holds without declaration in which capacity he does so, it shall be taken that he holds in that capacity in which he ought of right to take and hold. He takes in one capacity or the other; not in both. It is therefore reasonable that he should hold in the rightful capacity, and so, in the absence of proof to the contrary, the law presumes."

The proposition meets the necessities of the present case. Harrison, as administrator, receives the fund, and the law requires its immediate appropriation to the testator's debt. The debt is to be paid to Harrison as representing the creditor to whom it is due. The law presumes this transfer to have been made and thereafter the guardian charged with the amount as part of the trust estate of the ward. This is a fair deduction from the rule and is supported by the maxim which assumes an act to be rightful rather than wrongful when it admits of either interpretation.

It is to be remarked that it does not appear in the case as reported that the administrator had the trust fund to pay over when he rendered his account; if he did not have it at the time, the guardian bond could not, upon any reasonable principle, be made responsible upon a presumed transfer of what did not exist to be transferred. To charge the bond under such circumstances would be to shift the con-

sequences of a *devastavit* committed by him in one capacity to the sureties for his official fidelity in another.

In *Graham* v. *Davidson*, 2 Dev. & Bat. Eq., 155, among other provisions of his will, the testator directed his daughter to " be furnished with a horse, saddle and bridle." In stating the accounts of the defendant as executor and as guardian to the legatee, he is credited with the value of the legacy in the first and charged with it in the latter, and this, on exception, is sustained.

The plaintiff's counsel cites and strongly relies on three cases, two of which in the circuit court of the United States were decided by Mr. Justice STORY, and the other in the supreme court of Massachusetts. We propose to examine and see their bearing upon the matter in controversy.

In *Taylor* v. *Deblois*, 4 Mason, 131, the administratrix, who was also guardian to a minor entitled to a distributive share of the intestate's estate, caused her administration account to be settled in the probate court and the amount of each share ascertained. To some of the distributees the sums due them were paid, and the administratrix retained the share of her ward. It was declared that this share was held by her, not as administratrix, but as guardian, and the court in discussing the general subject of retainer say: " If then it be a right of the administrator to retain a debt due to him in his own right, or in right of another, the doctrine equally applies when he unites in himself the character of guardian and has assets in his hands to discharge the debt due to his ward. I go further and consider it the *duty under such circumstances to retain*, and if he were to yield up the assets without such retainer, it would, in my judgment, be a *maladministration of his guardianship* for which, in case of loss, he and his sureties might be justly held responsible upon the guardianship bond." ·He states the general rule to be " that when the party unites in himself, by representation or otherwise, the character of debtor and creditor,

inasmuch as he cannot sue himself, he is entitled to retain, and the law *will presume a retainer in satisfaction of the debt*, if there are assets in his hands."

In *Pratt* v. *Northam*, 5 Mason, 95, the administrator *cum testamento annexo*, who also became guardian to his two infant daughters, legatees, substituted in place of their mother, who died, received assets of his testator, after his appointment as guardian, which were fraudulently suppressed and no return thereof made, and the bill sought to charge the sureties to the guardian bond with the *devastavit* and waste, the court say : "It was plainly his duty to inventory them (the assets) and account for them as part of the testator's estate in his hands and possession, and upon settlement of his accounts in the probate office, he ought to have procured a decree directing a distribution of the balance between his wards in equal moities. *Had he done so,* there would have been no question upon the principles settled by this court in *Taylor* v. *Deblois, supra,* that the *administration bond would have been discharged, and by operation of law, he would have been deemed to possess the balance in his character as guardian."* And it was declared that the "act or election to hold the property in a different capacity from that in which it was received, may justly be insisted on before the responsibility is shifted from one class of sureties to another. Besides, here the administrator never admitted the assets to be in his hands. He held them secretly as his own, without acknowledgment, *and settled his probate account without an admission of them."* It is apparent this is in entire harmony with the current authorities referred to, and not opposed to the doctrine of retainer as applied to the present case. If there had been an ascertained amount, a definite sum arising from a legacy, as in the present case, there is a distinct debt due the infant, the law would interfere and transfer the fund from one to the other trusteeship.

In *Conkey* v. *Dickinson,* 13 Met., 51, the action was brought

on a guardian bond and it was proposed to charge the guardian with a residuary legacy given the ward in the will of one Sally S. Dickinson, who died after the defendant's appointment and during the ward's minority, wherein the guardian had been appointed executor and qualified as such. The court say: "We consider the law to be well settled, that if a legacy is given by will and the same person is executor and trustee or guardian for the legatee, he is not bound to account for the legacy as executor, if he has sufficient assets, unless he has rendered an account in the probate office charging himself as trustee or guardian and *that account has been allowed* by the probate court."

The decision rests upon the ground that until there is a legally ascertained balance, nothing remaining to be done except to pay over, the fund continues without change in the hands of the executor as such and is not tranferred.

In a recent work the author sums up the results of his investigation in these words: "The better opinion is, that after the time limited by law for the settlement of the estate has elapsed and there is no evidence of an intent to hold longer, as executor, he shall be presumed to hold as guardian, on the principle that what the law enjoins them to do, shall be considered as done." Schouler on Dom. Rel., 441.

We do not consider the cases of *Wilborn* v. *Gorrell*, 3 Ire. Eq., 117, and of the *State* v. *Brown*, 68 N. C., 554, as impugning the principle. In the former it is decided that a note, secured by a retention of title to the land sold, and executed for the purchase money by one who afterwards became guardian to the infant to whom the vendor, her grandfather, had given the·note, was not extinguished by passing into the debtor's hands nor did it lose the security of the land. In the other, it is declared that when a guardian becomes trustee there is no presumption of law of a transfer of the fund from the first to the latter capacity; and as a presumption of fact, it was negatived by the finding of the referee

that there had been no change of the estate from the guardian to the trustee.

We think the following conclusions may be fairly deduced from the adjudged cases:

1. When the simple relation of debtor and creditor exists and the same person representing both, is to pay and to receive, the possession of assets which ought to be applied to the debt is in law an application.

2. When one is clothed with a double fiduciary capacity, and the balance remaining upon a full execution of one trust belongs to the other, if the amount has been definitely and authoritatively ascertained and the fund is then in the trustee's hands, the law makes the transfer.

3. If the first trust is not closed, although the trustee may have rendered an account which has not been passed on by a competent tribunal, the fund remains unchanged and is held as before.

4. The trustee may, by an unequivocal act indicating the intent, elect to hold the fund in possession in another capacity, and it will be thereby transferred.

The present case clearly is embraced in the first mentioned class, and is distinguished from the others.

The result is, that the assets of the testator, McKnight, which came into the possession of Harrison from the administration of the personal estate and the sale of the lands, were instantly applied to the debt due the ward, and he then held the same as a part of the trust estate which is secured by the guardian bond. The payment of the debt relieved the sureties to the administration bond. It would be a hard and oppressive rule that holds these sureties responsible after such payment was made to the guardian for his subsequent mismanagement and waste. Between the two sets of sureties, the loss must fall on those who undertook for the fidelity of his administration as guardian of the ward's estate.

The conclusion to which we have come in sustaining the exception renders unnecessary the consideration of others dependent on it.

While the assets received by the administrator are sufficient to discharge the entire indebtedness to the infant, and were by law at once appropriated thereto, the report of the referee shows that a portion of them, for which the guardian bond is responsible, were paid over to the testator's other creditors. On the 15th day of May, 1875, the administrator received $1,555.23, raised by a mortgage of some of the lands bought by his wife, and with her consent paid the money to the other creditors including herself. A part of this sum was or may have been needed to pay the balance then due the infant, and if so, has been misapplied, and may be followed by the plaintiffs into the hands of those who participated in this misapplication and recovered for their partial exoneration. In order to ascertain whether any and how much of the preferred debt remained due, and was paid out of the fund then received, and what are the several liabilities of the creditors to whom it was paid, a reference is necessary, and if the plaintiffs so desire, will be ordered, and meanwhile the cause will be retained. A decree may be drawn in accordance with this opinion.

PER CURIAM.                    Judgment accordingly.