JAMES BELL *et al.*

*v.*

THE PEOPLE, use of Mary E. Evans.

1.　ADMINISTRATOR'S BOND—*setting aside will does not release sureties.* A decree of the circuit court setting aside a will and directing an administrator with the will annexed to administer the estate as intestate property, will not release the sureties on his bond for the funds coming to his hands when he continues to act as administrator and closes the administration of the estate.

2.　ADMINISTRATOR — GUARDIAN — *in which capacity liable.* Where an administrator of an estate is also guardian for the sole heir and distributee, and closes the administration of the estate substantially, though he makes no report of the same to the county court, and charges himself in a private book with the funds due the heir, and pays the necessary expenses of his ward and collects the rents as guardian, and a reasonable time has elapsed for completing the administration of the estate, his sureties as administrator will be released, and his sureties as guardian will be liable for the funds which came into his hands in the capacity of administrator.

3.　Where a person sustains the dual relation or trust of administrator and of guardian of the sole distributee, and before his death makes no settlement of his accounts, or does any other act showing an election as to the capacity in which he holds the unexpended funds of the estate in his hands, it will be presumed after a reasonable time for settling the estate has elapsed, and especially after the administration of the estate has been completed, that he held such funds as guardian, and his sureties as guardian alone will be liable for the same. An order of the county court transferring the funds in his hands as administrator is not indispensable in such case to charge his sureties as guardian.

APPEAL from the Appellate Court of the Fourth District; the Hon. TAZEWELL B. TANNER, presiding Justice, and the Hon. JAMES C. ALLEN and Hon. GEORGE W. WALL, Justices.

Messrs. GREEN & GILBERT, for the appellants Bell and Rich.

Mr. ANDREW D. DUFF, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This suit was brought against the sureties on the official bond of Jackson Frick, now deceased, as administrator of the estate of James Evans, deceased, for the benefit of Mary E. Evans, in the circuit court of Union county. At the same term of court another suit was brought for the use of the same plaintiff, against Jacob Rendleman and Charles Hortline, two of the defendants in this case, and who are sureties on the official bond of the same Jackson Frick, as guardian for the same Mary E. Evans.

Both cases were submitted to the court for trial on an agreed statement of facts, from which it appears that Jackson Frick, since deceased, was, on the 23d day of January, 1874, appointed administrator, with the will annexed, of the estate of James Evans, and gave bond, as required by law, in the statutory form, with all of defendants in this action as his sureties, and at once entered upon the discharge of his duties as such administrator. Such proceedings were afterwards had in the circuit court of that county that the will of James Evans was set aside, but by the decree rendered the administrator was required to administer the effects of the estate as intestate property, unless the county court should otherwise direct. It does not appear, however, that the county court ever made any different order relieving Frick from the duty imposed by the decree to administer the estate as intestate property.

After giving bond as such administrator Frick filed an inventory of the effects of the estate. In the course of administration he substantially reduced the effects of the estate to his possession, and paid all the debts of the estate with the exception perhaps of two small claims, trifling in

amount. On the 20th day of August, 1874, Frick was appointed guardian of Mary E. Evans, sole heir of the said James Evans, deceased, and as such guardian gave the bond declared on in the other suit, with the defendants in that action as his sureties.

It is admitted that Frick never made any report of his acts as administrator of the estate of Evans, other than filing an inventory of the assets of the estate and the sale bills of the personal property; and that the records of the county court show no further proceedings, except the allowance of claims against the estate.

It is also admitted that Frick at no time made any report of his acts and doings as guardian of the heir of the estate of which he was administrator; and that the records of the county court, when he was appointed, show nothing other than his appointment as such guardian and the issuing of letters of guardianship. But it is admitted that Frick continued to act as guardian for the beneficial plaintiff up to the time of his death, and paid out money for and on behalf of his ward, and made entries in his memorandum book in relation to his trust as such guardian.

It is also admitted that notes and accounts belonging to the estate, amounting to $7800, were in the hands of Frick at the time of his death; that of such amount the administrator *de bonis non* has collected $78, and of the remainder probably $88 can be realized, and the balance is conceded to be worthless.

At the time of the death of Frick, which occurred on the 20th of December, 1877, it is admitted, after allowing all just credits, there remained in his hands the sum of $5797.14 unaccounted for, either as administrator or guardian, or otherwise, and for which one set or the other of his sureties on his official bond is responsible. Certain rents came to his hands for the use of his ward, for which it is conceded the sureties on his bond as guardian are alone liable.

In the case before us the circuit court rendered judgment against the sureties on the administrator's bond for the

penalty named, and for the damages found, $5797.14; and we understand from counsel that a judgment was also rendered in the other case on the guardian's bond, against the sureties therein, for the penalty named, and for the balance found due from Frick to the estate at the time of his death, and also for the rents that had come to his hands from the lands of his ward. The suggestion is, that the latter judgment, as well as the one on the administrator's bond rendered in the circuit court, was affirmed in the Appellate Court, but the transcript before us contains only the record of the judgment on the administrator's bond.

All the facts in the case appear in a statement signed by the respective counsel, and there can be no disagreement concerning them.

The parties complaining of the judgment in this case are the sureties on the bond of Jackson Frick, as administrator of the estate of James Evans, deceased, and not the sureties on his bond as guardian of the heir to the estate of which he was administrator. Although it is conceded the administrator made no reports of his acts and doings in the matters of the estate to the county court, as the law required him to do, still it is maintained the sureties on his bond as administrator are not responsible for the funds remaining in his hands at the time of his death, for two reasons: first, because his appointment as administrator, with the will annexed, of the estate of Evans ceased and was determined when the will was declared void by the decree of the circuit court; and second, because he ceased to act as such administrator long before his death.

On the first point made, we are inclined to hold the effect of the decree declaring the will of decedent invalid, was only to relieve Frick from administering the estate according to the provisions of the will. The decree itself provided he should continue to administer the estate as intestate property, unless the county court otherwise ordered, which, as we have seen, it did not do; and he must have so understood it, for he continued to act as such administrator until the administra-

tion of the estate was in fact closed by the payment of all claims against it, and of the expenses of administration.

The other point made we think is well taken. Frick was appointed administrator of the estate in January, 1874, and did not die until December, 1877, more than three years after his appointment, and long after he had been appointed guardian of the heir of the estate. Ample time had elapsed in which to complete the administration of the estate, and, as we understand the admissions in the record, he had in fact reduced all the personal effects of the estate to his possession that could be collected, except, perhaps, a small amount, and had paid all claims allowed against it, with the exception of two, both of which were insignificant in amount. Although he made no reports to the county court of his acts and doings as such administrator, the administration of the estate was practically closed long before the death of the administrator. The funds not wanted for the payment of claims and expenses of administration remained in his hands, and nothing remained to be done but to formally charge himself with the funds on hand as guardian of the heir of the estate.

The fact that Frick, from time to time, paid out funds on behalf of his ward, as the same were needed, to defray current expenses, is evidence that he treated the residue of the estate unexpended by him as administrator as funds belonging to his ward. Entries of such expenditures made in his books are corroborative of the same fact. But this is not all. Since the death of the administrator, there has been found among his private and official papers a memorandum-book that belonged to him in his lifetime, which contains entries, in his handwriting, in relation to his trust as guardian of Mary E. Evans. In a schedule contained in the record the entries made in the memorandum-book are set out *in hæc verba*, from which it appears that, after making a brief statement of the total amount received from the estate of which he was administrator, and of the amounts paid out, including the widow's award, the deceased then stated the balance due his ward and

the amount paid out on her behalf, together with a statement of rents received, the last entry being of the date of November 27, 1877; and the admission in the record is, that at the time of his death the administrator had in his hands moneys and effects unaccounted for nearly equal to the sum he states in that memorandum, under the date of February 13, 1877, was due the ward, and the exact amount for which judgment was rendered.

These entries were equivalent to formal charge of the then unexpended funds of the estate to himself as guardian of the heir; but even that was not indispensable to charge him with such funds as guardian. After completing the administration of the estate, as we have seen he did, by the payment of all debts and the expenses of administration, it was his duty to pay the funds unexpended to the guardian of the heir, and, as he bore that relation to the heir himself, he could do nothing more than retain such funds in his hands for the benefit of his ward, which all the circumstances show he did. An authority for this view of the law is found in *Karr* v. *Karr*, 6 Dana, 4, where the same person was executor or administrator of the estate and guardian of a distributee, and before his death made no settlement or election showing in which capacity he held the unexpended funds in his hands; it was presumed, after a reasonable time for settling the estate had elapsed, that he held such funds—at least that portion that was not necessary for the payment of debts, as guardian of such distributee. Reasoning upon the facts of the case, the court said, had the guardian been another person, it would have been his duty to coerce payment from such administrator, but as he was himself the administrator, he could only treat the funds as belonging to his ward.

In *Watkins* v. *Shaw*, 2 G. & J. (Md.) 220, it was said: "This court are of opinion that where a sole executor sustains the twofold character of executor and guardian, the law will adjudge the ward's proportion of the property then in his hands to be in his hands in the capacity of guardian, after the time

limited by law for the settlement of the estate, whether a final account has been passed by the orphan's court or not, upon the principle that what the law has enjoined upon him to do shall be considered as done, and from that time he holds the ward's proportion of the property, by operation of law, in that character in which he would be entitled to receive it upon final completion of his trust as executor."

The case of *Carroll* v. *Bosley,* 6 Yerger, 220, was a suit on an administration bond. One of the sureties sued pleaded that before the appointment of defendant as administrator *de bonis non* he had been appointed guardian for the party for whom the suit was brought, and who would be entitled to the estate under the will of the testator; that he gave bond and security as guardian according to law, and that more than two years had elapsed from the date of the administration bond before suit was brought; that while the administrator united in himself both the office of administrator and guardian, he had in his hands all the assets of the estate which were left after the payment of debts, and that by operation of law the amount due him in right of his ward was retained by and vested in him as guardian. On demurrer to the plea, the only question made was whether, as the principal defendant was both administrator and guardian, the law will presume he held the property and money of the estate as guardian after the expiration of two years from his appointment as administrator, although he had done no act to indicate in what character he held, and the court ruled that "as it was his duty to settle the administration in two years and pay over to the guardian, the law will presume he performed the duty, and and consequently the presumption is that after two years he held the assets as guardian."

In *Taylor et al.* v. *Deblois,* 4 Mason, 131, the question made was whether the administratrix, being at the same time guardian, could, by any act of her own or by operation of law, transfer the property which was in her hands as assets of the intestate so as to make it the property of the minors who

were her wards, and thus exonerate herself from any further
liability as administratrix, and by consequence also exonerate
the sureties upon her administration bond, and it was held
that the assets in her hands could be so transferred, both by
the act of the administratrix indicating an election to hold as
guardian, and by operation of law. After a close and logical
consideration of the question raised, STORY, J., said: "Here,
after the guardianship, the administratrix having assets to
pay the amount of the distributive shares, it was presently
satisfied by way of retainer, and by operation of law there
was a transmutation of the same to her as guardian, and she
no longer held the same as administratrix."

In *Pratt et al.* v. *Northam et al.* 5 Mason, 95, after ap-
proving of the principle declared in *Taylor* v. *Deblois*, STORY,
J., said: "If any act had been done by" the administrator
"by which he elected to pass the property to his guardianship
account, or if he had charged himself with it in the probate
court as guardian," it would bring the case in hand within the
principle of the case cited. According to the decision in
*Pratt* v. *Northam*, the administrator may indicate his election
to hold the funds in his hands in the capacity of guardian by
an act done out of court as effectually as if the same act were
done in court. The account the administrator in this case
stated in his memorandum book, where he charged himself
with the funds remaining in his hands as guardian, indicates
as clearly his election to hold such funds as guardian as
though the statement he made had afterwards been filed in
the office of the clerk of the court or with the court.

The cases cited bear a striking likeness, both as to the facts
and principles discussed, with the one at bar. As we have
seen, the funds remaining in the hands of Frick at his death
were not needed for the payment of the debts or other charges
against the estate, and as it was not necessary for him to retain
them for that purpose, the presumption may well be indulged
he treated such funds still remaining in his hands as belong-
ing to his ward. The admitted fact that the guardian from

time to time paid out money to discharge the current expenses of his ward and credited the same to himself as guardian, tends strongly to corroborate this view. That Frick assumed to act, and did act as guardian under his appointment, is conclusively proven by the fact he collected rents for his ward, and we may well believe he took to himself all funds that belonged to him in that capacity.

It was not indispensable there should have been an order of the county court to transfer the funds remaining in the hands of the administrator after payment of all claims against the estate, to the guardian of the heir of the estate. Of course that is the more regular way, but when the same person acts in the dual capacity of administrator, and guardian of the heir of the same estate, it will be sufficient if he treat the funds in his hands as belonging to his ward and held in his capacity as guardian, and it will be presumed he does so after a reasonable time has elapsed for the settlement of the estate, or, as in this case, where it appears the estate has been in fact administered. The principle declared in *Weir v. The People*, 78 Ill. 192, supports this view of the law.

Under the law as we understand it, the sureties on Frick's bond as administrator of the estate of Evans, are not liable for the funds that came to his hands from the estate and unaccounted for at the time of his death, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE CRAIG, dissenting :

I can not concur with the majority of the court in the decision of this case. In my judgment, under the provisions of our statutes the sureties on the bond of Frick, as administrator of the estate, are liable for the amount of money which he received as administrator, and which has never been accounted for. Of the money which the administrator received belonging to the estate, he died with $5797.14 in his hands, no part of which has been paid over to the person entitled thereto or otherwise accounted for.

Section 58, Rev. Stat. 1874, page 114, provides that executors and administrators shall be chargeable with so much of the estate of the decedent as they might or shall receive. Section 111 requires executors and administrators to exhibit accounts of their administration for settlement to the county court at the expiration of the first year after they were appointed, and every twelve months thereafter, until the duties of their administration are fully completed, and no final settlement shall be made and approved by the court until the heirs of the decedent are notified, in such manner as the court shall direct.

No account was ever rendered by the administrator to the county court for its approval; nor was any order ever made by the county court directing or requiring the administrator to pay over to the guardian any portion of the estate which was in his hands as administrator.

The theory of the majority of the court, as I understand the opinion, is, that the presumption of law arises that Frick, as administrator, paid over the funds in his hands, after the expiration of the time provided by law for the settlement of the estate, to himself as guardian, and upon this presumption alone the sureties on the administrator's bond are released from liability. If a presumption of that kind could arise in any case, it is, in my opinion, rebutted by the facts presented by this record, and can have no application here. In the first place, the statute has not prescribed a definite time in which the administrator shall settle the estate, as did the statute of 1845; and hence it is not seen when it can be presumed the money passed to the guardian. Again, before an administrator can close the administration of the estate, and make distribution among the heirs, he is required to render an account to the county court, in order that it may be known by him and all concerned what amount of money is to be distributed, and an order of distribution must be obtained. This was not done. Besides, the fact that when Frick died there were claims against the estate unpaid, and notes and accounts in his hands belonging to the estate uncollected amounting to

$7800, would seem to show conclusively that Frick had not closed up the administration of the estate, and that the assets of the estate were still in his hands as administrator.

There is another fact that has an important bearing on the question. Section 22, Rev. Stat. 1874, page 560, requires a guardian to put and keep his ward's money at interest, upon security to be approved by the court, or invest the same in United States securities; but it nowhere appears that a single dollar of the money was ever loaned as required by law. If, therefore, it is to be presumed that the guardian did his duty, as it was presumed the money passed from the hands of the administrator to the guardian, the fact that no part of the money was ever loaned or invested as guardian, would seem to be clear and direct proof that he was not acting in the capacity of guardian with the money which had come to his hands as administrator, but still held and retained the same as administrator of the estate.

Importance is attached to the fact that a memorandum was found in a private book of Frick, after his death, which shows the amount of money which originally came into his hands as administrator, amount paid out, and that the balance belongs to his ward. I do not think this memorandum can have any bearing on the case, as it fails to show that he had the money in his possession when it was made; nor does it show in what capacity the money was in his hands. Whether Frick, as administrator, owed his ward the amount named, or whether as guardian, is entirely uncertain. But I do not regard the memorandum as competent evidence in this case. While it might be used as evidence against the administrator and his sureties for the purpose of fixing the amount in his hands belonging to the plaintiff, I am aware of no rule of evidence under which the defendants could introduce this memorandum for the purpose of showing that the administrator had paid out the money. It is a mere declaration of a co-defendant, which could not be used as evidence in his own favor. If the defendants had proven that the administrator, after sufficient

time had elapsed for closing the estate, actually had in his hands the amount of money which of right should pass over to the guardian, there would be more plausibility for holding that the money passed into the hands of the guardian; but such was not the case. For aught that appears, the administrator may have squandered the funds that belonged to the estate long before it was his duty to make final settlement. Under such circumstances, no reason suggests itself to my mind why the sureties on the administrator's bond should be released.

The evidence shows that the money came into the hands of Frick as administrator, and the least that could be required of the sureties on his bond is, to establish by proof that the administrator paid over the money to the guardian, or held it in his hands as guardian. This has not been done; but the sureties are released on a legal presumption, which may or may not have any foundation in fact. I can not sanction a doctrine which may lead to such disastrous results in the administration of estates. The better and by far the safer rule is, to require an administrator to make final settlement with the county court, and have his accounts approved and an order entered for the payment of the money in his hands to a guardian or other person entitled to the same, and an actual payment made, before the sureties are released. It was the duty of the sureties to see that the administrator faithfully discharged his trust. The bond they executed was given for that purpose, and, in my judgment, the administrator has failed to account for the money which came into his hands, and his sureties should be held responsible according to the terms and conditions of the bond which they executed.

In support of the principle announced in the opinion of a majority of the court, *Carroll* v. *Bosley*, 6 Yerger, 220, is referred to as an authority, but upon a close examination of the case it will be found that an important fact existed in it upon which the decision turned, which does not exist in this case. In the case cited, where the time expired in which

16—94 ILL.

the administrator was allowed to settle and close up the estate, it appeared that he had the assets in his hands ready to be paid over to the guardian, and upon that ground the court held, as he had the money ready to be paid over, by operation of law it would be vested in the guardian. It was there said: "If he had wasted the estate as administrator, before the time at which by law it was his duty to settle up and close his administration, the case would have been altered, and that fact should have been replied. But here it is averred that he had the assets in his hands; and having the money so in his hands, the amount due his ward was satisfied by way of retainer." As it does not appear by this record that the administrator had the assets ready to be paid over when the time had expired allowed him to settle the estate, it is evident the case cited can not control here.

*Karr* v. *Karr*, 6 Dana, 4, is also relied upon, but in that case no controversy arose between the two sets of sureties; nor was there any question of defalcation in the case, and it is not perceived what bearing the case can have here.

The principal case, however, relied upon is *Taylor* v. *Deblois*, 4 Mason, 131; but the facts upon which that decision was rendered were so different from the facts of this case that it can not control here. In that case the same person was administrator and guardian; but, from a statement of facts upon which the decision was rendered, it appears that "in 1808 the administratrix signed a certificate to the probate court, stating that as guardian she had in her possession or control the full amount of the distributive share of these minors; and thereupon the court ordered a quietus to be given to her as administratrix of her husband. This quietus, in substance, stated that she having fully administered the estate, the court ordered that she be and hereby is from henceforth acquitted and discharged of the same." Under these facts the court very properly decided that the money was held by Mrs. Deblois in the capacity of guardian; but it will be observed that the decision is founded on the fact that the administratrix made a report of her doings

as such to the probate court, which was approved, and she was thereupon discharged from further duties as administratrix. In her report it appeared that she then had on hand the distributive share of the money belonging to the minors. I am willing to concede that if Frick, as administrator, had made a like report, and obtained a like order thereafter, he would have held the money as guardian, and his sureties would have been released; but as he did nothing of the kind, the case cited can give no comfort to the position taken by the majority of the court.

The case of *Wilkins* v. *Shaw,* 2 G. & J. 220, has also been cited. I have had no opportunity to examine this case, and do not know the facts upon which the decision was rendered, but I am satisfied it will turn out, on examination, to be like the other cases.

These are the authorities relied upon to sustain the position that the sureties on the bond of the administrator are not liable, except the case of *Weir* v. *The People,* 78 Ill. 192, and the facts of that case are so widely different from this that a reference to it is not necessary. In my judgment, the authorities cited entirely fail to sustain the position taken by a majority of the court, and upon what principle the sureties on an administrator's bond ought to be released, where the administrator has disregarded all the requirements of the statute in the settlement of an estate, and finally squandered the money which belonged to the estate, and failed to pay it over, I can not well understand.

Mr. CHIEF JUSTICE WALKER: I concur in the views expressed by my brother CRAIG, and dissent from the conclusion reached by the majority of the court.