SAMUEL RUFFIN and others v. C. B. HARRISON and others.

*Trusts and Trustees—Administrators—Guardian.*

1. The decision in this case, reported in 81 N. C., 208, affirmed.

2. Where the same person is administrator and guardian, the balance in his hands as administrator, ascertained by judgment and directed to be applied to the ward's debt, is presumed to be held by him as guardian. The transfer of the fund is the work of the law, and it occurs and extinguishes the debt due from the administrator *instanter*.

3. The exception that the administrator did not at any one time have enough money raised by sale of realty to pay the ward's debt, is untenable, because by the terms of the decree, the payment of the debt is directed to be made out of assets then on hand and such as should come to hand—the sale of land being partly for cash and partly on time.

PETITION to rehear heard at February Term, 1882, of THE SUPREME COURT.

Messrs. *E. G. Haywood* and *Reade, Busbee & Busbee,* for plaintiffs.

Messrs. *Fowle & Snow, Davis & Cooke* and *A. M. Lewis & Son,* for defendants.

RUFFIN, J.   As asked to do, the court has carefully reconsidered its decision heretofore made in this cause, and fairly weighed the several objections that have been urged against it.   The result of our present deliberations is to confirm us in the conviction that the law governing the case was then properly expounded, and that the principles then enunciated, as those which should regulate the rights and liabilities of the parties, are just in themselves, and supported by the very highest authorities.   (81 N. C., 208.)

Although the facts were before stated in detail, we reca-

pitulate them, in order that the points objected to may be correctly apprehended.

In 1867, Alexander McKnight, who had previously been the guardian of the defendant, Lee A. Jeffreys, died leaving a last will under which his two daughters, the defendants Mrs. Harrison and Mrs. Ellis, and his widow, were the only beneficiaries. Upon the renunciation of the nominated executors, his son in-law, C. B. Harrison, qualified as his administrator with the will annexed, giving bond with the defendants W. F. Green, W. H. Mitchell, and the testator of the defendant, Mrs. Eaton, as his sureties. An action was instituted in the name of the ward by her next friend, against the administrator, for a settlement of such guardianship, and at spring term, 1868, the court of equity of Franklin county passed a decree in favor of the ward, for the sum of $5,997.86; and thereupon the said administrator commenced proceedings in the same court, for a sale of the lands belonging to the estate of his testator for assets to pay debts, making the before mentioned beneficiaries and all the creditors of the estate, including the said infant, parties defendant. In the proceeding, which pended for several years, the final account of the administration of the personal assets by the said Harrison was taken and settled, and at fall term, 1871, a judgment was rendered whereby it was declared that he then had in hand assets derived from the personalty to the amount of $1,773.01, and that the estate of the testator was indebted as follows:

1. The amount of said decree in favor of Miss Jeffreys for $5,997.56.

2. To Mrs. Ellis and her daughter, Penelope Egerton, the sum of $5,584.47; and

3. To Mrs. Harrison sums amounting in the aggregate to $2,363.73.

For the purpose of paying said debts, leave was given to the administrator to sell the testator's lands for cash as to

one-fourth of the purchase money, and the balance payable in two equal installments of twelve and eighteen months, and it was declared that the debts so ascertained should be paid out of the assets then on hand, and as they should come to hand from the sales of the lands—" the debt due to the defendant Lee A. Jeffreys however to be paid in preference to all other debts."

The sales took place in October, 1871, when Mrs. Ellis purchased a portion at $3,857.03; Mrs. Harrison a portion at $3,819.75; W. F. Green some at $2,083, and W. Boulton some at $1,749.94.

By a subsequent order, made in the same cause, other lands were sold in December, 1872, and purchased by Mrs. Harrison at the price of $3,336.00.

On the 7th of November, 1871, just after the date of the first sales, the said Harrison qualified as guardian to the infant, Lee A. Jeffreys, and continued to be such until the 7th of September, 1875, when he was removed by order of the judge of probate.

At the time of the rendition of the decree fixing him with personal assets to the amount of $1,773.01, and also at the time of his qualification as guardian in November, 1871, the said Harrison had that sum, and a much larger amount, to his individual credit in bank, and so continued to have until after the 25th of May, 1872, when he made his first guardian return, in which he elected to hold that sum as guardian, charging himself therewith as such, and crediting himself with a still larger sum expended in the maintenance of the infant before he became her guardian, and he afterwards withdrew the amount from bank and used it in his private business.

Of the several purchasers at the sales of land, Green and Boulton only paid the one-fourth cash as required by the terms of the order, and the amounts paid by them were consumed in paying attorney's fees, costs, commissions, &c.

In. October, 1872, the administrator received from Green and Boulton, as their second installment the sum of $1,437.35, and in May and July, 1873, he received of them, as their last installment the sum of $1,450.24—making an aggregate of $2,887.59—all of which he deposited to his own account in bank, and afterwards misapplied to his own use, though he charged himself therewith in his returns made as guardian in the years 1873 and 1874.

In 1872 Mrs. Harrison resold a portion of the lands purchased at the administrator's sale, to one Porter, and realized therefrom the sum of $1,508.00 which she paid to Harrison as administrator towards the purchase money due from her. She also sold another portion in 1874 for which she received $1,000, and in May, 1875, by mortgaging, still another portion, she procured a further sum of $1,555.23 which last two sums she applied in the same way, by paying them to Harrison administrator. All these sums were misapplied by Harrison, the first two being wasted and the last paid to Mrs. Ellis in discharge of the balance due her and her daughter, after deducting the amount of her land-purchase, upon the decree made in their favor in 1871.

Upon this state of facts the plaintiffs, who are the sureties of Harrison on his guardian bond, insist that they are entitled to be indemnified by the sureties on the administration bond, for so much of the assets as was wasted by Harrison, the administrator, and such is the object sought to be attained by this action. They also seek to charge Mrs. Harrison with the debt due Lee A. Jeffreys, alleging that she is still owing that amount, as the unpaid purchase money of her lands.

For lack of certain information deemed to be necessary to a satisfactory determination of the points raised as to the liability of Mrs. Harrison, the court at the time of its former adjudication in the cause, wholly pretermitted that branch of the case, after directing an inquiry to be made as to some

material facts; and the decision rendered was exclusively with reference to the rights and respective liabilities, as between themselves, of the two sets of sureties. It is that part of the former adjudication which we are asked to reverse.

In considering it, the court adopted what seemed to be a clear legal proposition, that if the legal consequences attending the possession by Harrison, as administrator, of assets applicable, and by the decree ordered to be applied to the ward's debt, the duty of collecting which devolved upon him as guardian, amounted to a payment, then, the liability for all subsequent mismanagement and waste would be shifted from the administration to the guardian bond, and the sureties on the former would be discharged.

That such consequences did attend the possession of assets under the circumstances of this case, seemed clear to the court then, as it does to us now. The two well-defined characters of debtor and creditor were united in the same person. Harrison was both to pay and receive, and if payment had been refused by him, there was no one to enforce it. Whenever such a state of facts exists, the law by its own implication considers the fund in the hands and possession of the party, in that representative character in which it *ought* to be held.

The application of the assets to the debt was the act of the law, and it occurred and effectually extinguished the debt, the very moment that they touched his hands. Being thus extinguished, and by legal intendment paid, it is impossible that the debt could be revived, as against the sureties to the administration bond, by any subsequent misapplication of the fund, whether proximate or remote.

It cannot be necessary to reproduce all the authorities adduced by the Chief Justice, who spoke for the court. Their application to the subject can be readily seen, as well as their conclusive force upon the respective rights of the parties.

We propose however to refer to some others, in order that

it may be seen how universally the principles relied on for the decision have been recognized.

In *Modawell* v. *Hudson*, 27 Ala., 75, it was held that when on a final settlement a balance was found against an administrator who thereupon resigned, and became administrator *de bonis non*, a presumption of payment immediately arose, and he and his sureties on his last bond alone were liable, and the decision rested solely upon the ground that the same person filled both trusts, and must needs be both plaintiff and defendant in any proceeding to enforce payment; hence no step could be taken in that direction, and therefore the rule of presumed payment operated.   In *Bell* v. *Evans*, 94 Ill., 230, the supreme court of that state ruled that when an administrator of an estate was also guardian for a distributee, it would be presumed after he had substantially closed the administration, that he held the funds as guardian, and the sureties to the administration bond were released.   The court of appeals for the State of Maryland decided in *Seegar* v. *Belton*, 6 Har. and Johnson, 162, that when the same person was administrator and guardian to the next of kin, the balance in his hands at the rendition of his final account as administrator, was presumed to be in his hands, not as administrator to the deceased, but as guardian to the next of kin; and in commenting on the case, it was said that the transfer took place by operation of law, and was predicated upon the ground, that the same hand was to pay and to receive; and therefore that which the law required to be done, should be deemed to have been done.

But it is said for the plaintiffs that this doctrine of extinguishment has its qualifications, and in order that it may operate in any case, it is essential that the debtor hand should have the money *actually in possession,* and not merely on deposit in bank to his private account, as was the case with the $1,773.01 of personal assets fixed upon the administrator by the decree of fall term, 1871.

The course of their argument is that such a mode of deposit was in itself a breach of the administration bond, for that, when thus placed to his own credit, it ceased to be money belonging to the estate, and was converted into a solvent credit due to Harrison in his private capacity; and that such a breach could not be repaired by his subsequent appointment as guardian; nor could he, by his mere election on paper and when his hands were empty, shift the responsibility for his *devastavit* from one set of sureties to the other. It is needless to follow this very ingenious argument, as the facts of the case furnish no support for it. However a doubt as to the respective liabilities of the two sets of sureties might have arisen, in case the money so deposited had never again reached Harrison's hands, and had been lost through the failure of the depositary, or any other like cause, no such question can be raised under existing circumstances, since it is put beyond all cavil, by the proofs in the cause and the finding of the referee, that after Harrison's qualification as guardian, he not only elected to hold that sum in that capacity, but sought to apply it to his own charges for maintenance of his ward, and with that view drew the money from bank and used it. Thus it was, that after its appropriation to this particular debt by the decree to which both were parties, and after Harrison occupied the dual relation of administrator and guardian, or debtor and creditor, the very sum came actually to his hands, and being in his hands, its immediate application to the ward's debt was the work of the law.

Again it is said, that the principle cannot operate unless there has been some act done, looking to a separation of the fund from the other administration assets, or some distinguishing mark put upon it, so as to manifest an election to hold it as guardian. What more could have been done in this direction than was accomplished by the decree? After ascertaining how much the administrator had in hand from

the personalty, it made an express and specific appropriation of the amount to the debt due to the infant, and gave a positive direction that it should be so applied, and not otherwise. Why then speak of designating a part of the fund when the whole of it was hers?

A point is made too as to the several sums that came at different times to the administrator's hands from the sales of the realty. It is insisted that as to them the doctrine of extinguishment did not apply, because the paying hand did not hold *enough at one time* to satisfy the entire debt due the receiving hand, and that as no creditor can be compelled to accept payment in installments, so neither should a receiving hand be forced to do so, by having a part of the claim extinguished by operation of law. The terms of the same decree furnish the surest answer to this suggestion also. The debt due the infant was declared to be of the highest dignity, and was directed to be paid first of all the claims against the estate. It was to be paid with the assets then on hand, and such as should come to hand, from the sales of land, which sales were ordered to be made partly for cash and partly on time. The decree bound all the parties to it, and it is impossible to mistake the purpose to make a gradual application of the assets to the infant's debt, at such times and in such sums as they should come to hand, until its liquidation was complete.

These several sums thus set apart and appropriated, it was Harrison's duty to have paid upon the debt due himself as guardian, as soon as they reached his hands, and there being no one to enforce that duty, the law made the application of each, and thereby extinguished so much of that debt.

The result is as declared in the opinion of the Chief Justice. So much of the personal assets as was found to be in his hands by the decree of fall term, 1871, and those which came to him from the sales of lands, except so far as they

were necessarily consumed in paying fees and other charges, were by legal intendment applied to the ward's debt, and Harrison thereafter held the same as parts of her estate secured by the guardian bond, and *pro tanto* were the sureties on the administration discharged.

The judgment of the court as heretofore rendered is affirmed, and the petition to rehear is dismissed.

PER CURIAM.                    Judgment accordingly.